UNITED STATES of America,
Plaintiff-Appellee,

v.

Harry D. IACONETTI,
Defendant-Appellant.

No. 974, Docket 76–1034.

United States Court of Appeals,
Second Circuit.

Argued April 27, 1976.

Decided Aug. 4, 1976.

David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn (Raymond J. Dearie, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for plaintiff-appellee.

Leon Dicker, New York City, for defendant-appellant.

Before LUMBARD, WATERMAN and FEINBERG, Circuit Judges.

WATERMAN, Circuit Judge:

This is an appeal from a judgment of conviction entered in the Eastern District of New York after a jury trial before Judge Jack B. Weinstein. Appellant was convicted of having solicited and received a bribe in violation of 18 U.S.C. § 201(c).[1]

The indictment comprised five counts, charging Iaconetti with bribe solicitation and receipt, and with attempted extortion under color of official right and by fear of economic loss, in connection with his duties as Quality Assurance Specialist for the General Services Administration ("GSA"). In this position, appellant acted primarily as an inspector, supervising the preparation and administration of contracts between GSA and private contractors who were to provide various goods and services to the federal government. The jury returned guilty verdicts on all five counts, but prior

---

1. *§ 201. Bribery of public officials and witnesses.*

      *     *     *     *     *     *

  (c) Whoever, being a public official or person selected to be a public official, directly or indirectly, corruptly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself or for any other person or entity, in return for:

    (1) being influenced in his performance of any official act; or

    (2) being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or

    (3) being induced to do or omit to do any act in violation of his official duty;

      *     *     *     *     *     *

Shall be fined not more than $20,000 or three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States.

to the imposition of sentence the trial judge, for reasons set out below, dismissed the extortion counts without prejudice.

The Government proved to the satisfaction of the jury that one such private contractor, Lightalarms Electronics Corporation of Brooklyn, New York, was awarded a government contract in October, 1974, and Iaconetti was assigned to supervise that contract. There was evidence that appellant, during contract discussions with a Lou Sonner of Lightalarms, warned him that he would need a payment from Sonner of 1% of the estimated value of the contract price in order to insure that no problems would develop during the life of the contract. Sonner, fearful that failure to pay the requested sum, particularly in view of Iaconetti's statement that he would be sharing the payment with a superior in the GSA, would jeopardize all of Lightalarms' government work, discussed the matter with his partners. Iaconetti repeated these overtures several times, but no payment was ever made by Lightalarms, Iaconetti having been reassigned to a plant in New Jersey and having had no further contact with Lightalarms.

In February, 1975, Iaconetti was assigned to conduct a pre-award survey of Champion Envelope Manufacturing Company so as to assess whether Champion was capable of performing a contract which the company had successfully bid upon. Iaconetti met with Michael Lioi, President of Champion, and after indicating to him during two preliminary meetings that he had some doubt about Champion's ability fully to perform the contract, Iaconetti intimated that if Lioi would be willing to pay 1% of the contract price to him, he would assure favorable treatment for Champion by the upper echelon of GSA. This February 10 meeting ended with Lioi stating that he would have to speak with his associates.

Lioi did immediately contact his business partners Babiuk and Goldman, and later that evening, his attorney, Stern. The following morning, February 11, Lioi telephoned the FBI. On an agent's advice Lioi recorded on his own equipment his conver-

sion with Iaconetti later that day. During that session, Lioi agreed to pay a total of $9800 to Iaconetti and to make an advance payment of $1000. Several days later, arrangements were made for Lioi and Iaconetti to meet for the payment. By this time, FBI agents had equipped Lioi with a miniature recorder and transmitter. On the afternoon of February 24, 1975, Lioi met Iaconetti as previously arranged. Appellant directed Lioi to place the $1000 in the trunk of the government vehicle Iaconetti was driving. As he closed the trunk, appellant was arrested by FBI agents. The tapes of the recorded conversations of February 11 and 24 were introduced at trial.

Iaconetti took the stand and attempted to rebut the Government's allegations and proof by contending that in fact it was Lioi who had told Iaconetti that he wished to pay him $1000 to insure Champion's receiving the GSA contract. Appellant admitted at trial, however, that after his arrest he had told FBI agents an entirely different story—that in fact the entire matter with Lioi was merely a practical joke.

After conviction, Iaconetti moved for a new trial on the ground that certain of the testimony of Lioi's associate Goldman and of attorney Stern was prejudicial hearsay and thus was improperly admitted into evidence. The Government's chief witness at trial was Lioi. On cross-examination, defense counsel sought to impeach his credibility by suggesting that he in fact had initiated the scheme to pay the bribe. Iaconetti took the stand and attempted to discredit Lioi's testimony further. He testified that he scheduled the meetings after February 10 with Lioi so that he might trap Lioi, the real villain, into incriminating himself. The Government then put Stern and Goldman on the stand in rebuttal to corroborate Lioi's account of the transactions. They related Lioi's reports to them on February 10 of the statements Lioi said Iaconetti had made earlier that day; and specifically, they recounted Lioi's report to them of the money Iaconetti had requested.

Judge Weinstein denied the post-trial motion. He held that the statements either

were not hearsay under Rule 801(d)(1)(B)[2] and Rule 801(d)(2)(C)[3] of the new Federal Rules of Evidence, or were properly admissible under an exception[4] to the hearsay rule embodied in Rule 803(24), F.R. of Evid.[5]

Appellant now reasserts this claim of error in support of his argument for reversal and a new trial. We agree with Judge Weinstein that Stern's testimony was properly admitted under Rule 803(24), the residual hearsay exception, and that Goldman's testimony was admissible under Rule 803(24) and Rule 801(d)(2)(C). Thus concluding that the statements were properly admissible into evidence under recognized exceptions to the hearsay rule, we need not reach the additional question of whether the testimony might correctly be characterized as non-hearsay under Rule 801(d)(1)(B), the alternate basis for admissibility advanced below.

■ Rule 801(d)(2)(C) provides that a statement is not hearsay when it is offered against a party and was made by someone authorized by that party to make a statement concerning the subject involved.

Judge Weinstein held that the statements made by Lioi to Stern and Goldman could be considered admissions by Iaconetti under this exception on the theory that by requesting a bribe from Lioi, appellant impliedly authorized Lioi to confer with his associates in order to get their permission to pay the bribe. The court below explained that by demanding the bribe Iaconetti necessarily authorized the persons who ran the business to discuss his demand among themselves. While this theory of an implied authorization might justify the admission of Goldman's statements as he was Lioi's business partner and thus would necessarily be consulted prior to Champion's payment of the requested sum to Iaconetti, the same cannot be said of Stern, Lioi's attorney. His approval would presumably not be necessary, and thus it cannot be reasonably assumed that Iaconetti would have impliedly authorized Lioi's speaking to counsel regarding the bribe.

The second basis for admissibility, Rule 803(24), provides that hearsay statements not otherwise included within any specific exception may be admitted if they have

2. *Rule 801. Definitions.*
   *(d) Statements which are not hearsay.*—A statement is not hearsay if—
   (1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. . . .

3. *Rule 801. Definitions.*
   *(d) Statements which are not hearsay.*—A statement is not hearsay if—
   (2) *Admission by party-opponent.* The statement is offered against a party and is . . . (C) a statement by a person authorized by him to make a statement concerning the subject. . . .

4. At the time the statements were admitted at trial over defendant's objection, Judge Weinstein advanced a fourth alternative basis for their admissibility based on *United States v. Annunziato*, 293 F.2d 373 (2d Cir.), *cert. denied,* 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961). In his memorandum and order denying Iaconetti's motion for a new trial, the Judge declined to rest his decision on this ground. 406 F.Supp. 554 (E.D.N.Y.1976).

5. *Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial.*
   The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

   \*   \*   \*   \*   \*   \*

   (24) *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

equivalent circumstantial guarantees of trustworthiness and if, in addition, they meet four specified criteria. If "(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of [the] rules and the interests of justice will best be served by admission of the statement into evidence," the hearsay may be admitted provided that the "proponent of it makes known to the adverse party sufficiently in advance of the trial . . . to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant."

■ The court below held, and we agree, that the statements in question possessed sufficient indicia of reliability, and were the best evidence available to corroborate Lioi's account of the February 10 meeting. Moreover, the statements were relevant to a material proposition of fact in the case and they served to clarify what actually was said and intended by both Lioi and Iaconetti at that meeting. Of course the defendant was not given notice, prior to trial, of the Government's intention to offer the rebuttal testimony and was not notified until the Friday before the statements were offered and admitted on Monday, October 20, 1975. While strict compliance with the rule is thus lacking, we agree with Judge Weinstein that the defendant was given sufficient notice here, and that some latitude must be permitted in situations like

this in which the need does not become apparent until after the trial has commenced.[6] The fact that defendant did not request a continuance or in any way claim that he was unable adequately to prepare to meet the rebuttal testimony further militates against a finding that he was prejudiced by it. Thus, we conclude that the rebuttal testimony of Stern and Goldman was properly admitted.

■ Appellant's remaining points require no extended discussion. His contention that the tapes of the conversations of February 11 and 24 between Iaconetti and Lioi were inadmissible is ill-founded, for the tapes were made with Lioi's knowledge and were constitutionally seized, *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). His next claim, that the trial judge improperly instructed the jury on the elements of extortion, is also without merit. Iaconetti was charged in the indictment with bribe solicitation and receipt, and with extortion. Judge Weinstein found, and we agree, that there was enough evidence of both crimes to submit both of them to the jury. Prior to sentencing Iaconetti, the Judge on his own motion dismissed the extortion counts because he determined that appellant could not be convicted of more than one offense for doing essentially the same act. There was no error in that, nor in the judge's instructions to the jury. Finally, wholly without merit is appellant's unique claim that because his own testimony absolutely proved that he committed no crime, there was insufficient evidence in

---

**6.** Our holding should in no way be construed as in general approving the waiver of Rule 803(24)'s notice requirements. Pre-trial notice should clearly be given if at all possible, and only in those situations where requiring pre-trial notice is wholly impracticable, as here, should flexibility be accorded. The legislative history makes clear the importance of the notice requirement. The Supreme Court draft of this residual exception merely provided for the admissibility of "[a] statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness." F.R. of Evid., Rule

803(24) (Sup.Ct.Draft 1972). The exception was wholly deleted by the House Judiciary Committee. *See* H.R.Rep. No. 93–650, 93d Cong., 1st Sess. 5–6 (1973), U.S.Code Cong. & Admin.News 1974, p. 7051. The Senate Judiciary Committee reinstated the provision, *see* S.Rep. No. 93–1277, 93d Cong., 2d Sess. 18–20 (1974), U.S.Code Cong. & Admin.News 1974, p. 7051, and added all of the present qualifications except the notice requirement, which the Conference Committee inserted, presumably as a compromise measure. *See* H.R.Rep. No. 93–1597, 93d Cong., 2d Sess. 11–12 (1974), U.S. Code Cong. & Admin.News 1974, p. 7051.

the case to sustain the verdict. To the contrary, the Government's evidence overwhelmingly confirmed his guilt.

Affirmed.