**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Wade LESLIE,**
**Defendant-Appellant.**

**No. 76–1498.**

United States Court of Appeals,
Fifth Circuit.

Nov. 12, 1976.

Rehearing and Rehearing En Banc Denied
Dec. 23, 1976.

---

William Northington Clark (Court-appointed), Birmingham, Ala., for defendant-appellant.

Wayman G. Sherrer, U. S. Atty., George C. Batcheler, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before RIVES, GEWIN and MORGAN, Circuit Judges.

GEWIN, Circuit Judge:

Appellant was convicted of transporting a stolen 1972 Chevrolet Vega from Indianapolis, Indiana, to Huntsville, Alabama, and of feloniously selling and disposing of it there.[1] He was represented by court-appointed counsel and was tried by a jury. The district court sentenced him to two years' imprisonment. Appellant urges numerous grounds for reversal, but primarily emphasizes insufficiency of the evidence and the government's examination of three witnesses called by the court. After detailed consideration of the facts in the record, we affirm.

On June 6 or 7, 1974, Michael G. Noblitt, a special agent of the Federal Bureau of

---

1. 18 U.S.C. §§ 2312, 2313.

Investigation ("FBI"), received information from a confidential source that a stolen 1972 Vega would be delivered to Pogue's Body Shop in Huntsville at about 9:00 a. m. on June 8, 1974. Noblitt and two other agents began surveillance of Pogue's shop at approximately 8:00 a. m. on June 8, and 15 minutes later four men in a Buick Riviera arrived at the shop. They left shortly thereafter with an Alabama license tag for use on the Vega. About five minutes later the men, including the appellant, returned in the Buick and talked with Pogue. Again they left, but they returned 15 minutes later with both the Buick and the Vega. They left the Vega at the shop, driving away in the Buick. Noblitt then checked the vehicle identification number on the Vega and reported it to the National Crime Information Center. Shortly thereafter he received a response that a car with that number had been reported stolen on June 3 to the sheriff's office in Marion County, Indiana. Ten minutes later the four men returned in the Buick and talked with Pogue. Pogue left the lot in the Vega, and the agents arrested the four men.

Soon after their arrests the four men, identified as Robert Wade Leslie, Cornelius Gayle,[2] Charles Lynch, and Donnie Rogers, gave statements to the FBI. All four were convicted on guilty pleas in September, 1974, but the subsequent vacation of appellant's conviction resulted in the proceedings below and this appeal. The statements of Gayle, Lynch, and Rogers to the FBI indicated that the four men left Indianapolis in the Vega and Buick around midnight prior to the day of their arrests, that they changed drivers in Nashville, and that they met for breakfast at the Elks Club in Huntsville before the conversations and delivery of the Vega observed by the agents. The statements did not directly implicate Leslie as having knowledge that the Vega was stolen. However, they tended to support the inference that Leslie promoted the trip and that he was the "ringleader." Rogers said that Leslie had invited him to

travel to Huntsville for the weekend, and all three told the FBI that Leslie was the only one of the four who rode the entire way to Huntsville in the Vega. Gayle told the agents that he thought the Vega belonged to Leslie, and all three thought that the Buick belonged to Leslie's girlfriend.

The government based its case primarily on the testimony of Eddie Pogue and agent Noblitt. Pogue testified that he knew Leslie as "Dave" from prior dealings and that Dave had arranged by telephone on June 7, 1974, the day before the arrests, to sell a 1972 Vega to Pogue for $400, to be delivered on June 8. Noblitt testified regarding the call he had received, the FBI surveillance, and his observations at the time the Vega was delivered.

Upon the government's request, the court called Gayle, Lynch, and Rogers to testify as court witnesses. Gayle testified that he stole the Vega and, using the name Dave, made arrangements with Pogue for its disposition. He stated that only Rogers knew the car was stolen. Lynch and Rogers testified that Gayle had invited each of them to travel with him to Huntsville and that they had no knowledge of Leslie's involvement in the car theft. Finally, all three testified that Leslie rode in the Buick, not in the Vega, during the entire trip to Huntsville. The government used the prior statements and guilty pleas of Gayle, Lynch, and Rogers in an attempt to impeach their credibility. All three admitted signing a form waiving specified rights, including the right to remain silent. Lynch and Rogers admitted making the written statements introduced by the government, and Gayle admitted making most of the statements he was examined about. By way of explanation of the inconsistency between the FBI statements and their trial testimony, the three witnesses denied the truth of parts of their statements and had failures of memory about the truth of other parts. Gayle testified that he was under the influence of "speed," "acid," and barbi-

---

2. Cornelius Gayle was also known to some witnesses as Cornelius Neal, but he will be referred to as Gayle in this opinion.

turates when he gave the FBI his statement, and Lynch testified that he had smoked marijuana during the car ride to Huntsville. Further, all three said that they were under the impression that they would perhaps receive more favorable disposition of the charges against them if they would give statements and cooperate. The government offered testimony from agents Noblitt and Kennedy to show that the FBI statements were given freely, without any promise or hope of reward, and uninfluenced by the effects of drugs. The trial court instructed the jury that prior inconsistent statements could be used only in determining credibility, not as substantive evidence. The prosecutor was also allowed to question Gayle, Lynch, and Rogers briefly about their guilty pleas.

## I.  Sufficiency of the Evidence.

■ On appeal from a conviction courts are to view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, 704 (1942); *United States v. Box,* 530 F.2d 1258, 1263 (5th Cir. 1976); *United States v. Arias-Diaz,* 497 F.2d 165, 168 (5th Cir. 1974). The jury found that appellant, aided and abetted by Gayle, Lynch, and Rogers, transported a stolen Vega across state lines knowing it to have been stolen and that he knowingly and feloniously sold and disposed of it. There was evidence that the Vega delivered to Pogue had been stolen, that appellant was known to Pogue as "Dave," that Pogue had previously met and purchased a car from him, thereby becoming familiar with his voice and appearance, that Dave telephoned Pogue on June 7 to arrange a sale of the car, that appellant and three others drove to Huntsville in the Vega and Buick that night, obtained an Alabama license tag

from Pogue for use on the Vega, and finally left the Vega at Pogue's garage under suspicious circumstances. Although some of the evidence was conflicting, the jury could reasonably and logically infer from this evidence that Leslie initiated and directed the transaction knowing the Vega to have been stolen. *See Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 137, 99 L.Ed. 150, 166 (1954); *United States v. Warner,* 441 F.2d 821, 825 (5th Cir. 1971).

## II.  Impeachment of the Court's Witnesses.

Appellant's other major contention is that the court erred in calling Gayle, Lynch, and Rogers as court witnesses and in allowing the government to impeach them with their prior inconsistent statements and guilty pleas. After establishing that the Vega had been stolen and after eliciting the testimony of agent Noblitt and Mr. Pogue, the prosecutor requested that the court call Cornelius Gayle as a witness. He explained that the government considered Gayle an "adverse party" and that it did not wish to adopt his testimony. The government considered Gayle adverse or hostile because just prior to trial he told the prosecutor that his testimony would differ considerably from his FBI statement. On that basis the court called Gayle, as well as Lynch and Rogers upon similar representations by the government.

■ Federal Rule of Evidence 614 provides that a trial court may call witnesses on its own motion or at the suggestion of a party and that "all parties are entitled to cross-examine witnesses thus called." [3] Neither the rule nor the Advisory Committee Note thereto suggest what standards, if any, are to guide a court when requested by a party to call a witness. However, the note does suggest reasons for the court calling a witness:

**3.** Rule 614 provides in full:

  (a) *Calling by court.* The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

  (b) *Interrogation by court.* The court may interrogate witnesses, whether called by itself or by a party.

  (c) *Objections.* Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present.

Other reasons remain . . . to justify the continuation of the practice of calling court's witnesses. The right to cross-examine, with all it implies, is assured. The tendency of juries to associate a witness with the party calling him, regardless of technical aspects of vouching, is avoided. And the judge is not imprisoned within the case as made by the parties. F.R.Evd. 614, 28 U.S.C.A. at 435 (1975).

Rules 607 and 611 would appear to allow the government to lead, cross-examine, and impeach its own witness in cases like the instant one.[4] Yet given the asserted likelihood that Gayle, Lynch, and Rogers would testify adversely to the government, leading to the inevitable government attempt to impeach, the court could properly protect the prosecution from whatever tendency the jury might have had to associate the witnesses with the calling party. It is particularly important in a case such as the instant one that the testimony of material witnesses be presented to the jury. The crucial issues at trial involved appellant's knowledge, not his objective conduct. The best evidence of what appellant knew was in the recollections of his traveling companions. If a trial court could only call a witness in highly unusual circumstances, parties might not call a particular witness out of fear of the jury associating the calling party with him and the jury would be deprived of important testimony. The district court below acted within its discretion in calling the witnesses in order to prevent such an impairment of the fact-finding process. *See United States v. Lutwak,* 195 F.2d 748, 754–55 (7th Cir. 1952), *aff'd,* 344

U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593, *rehearing denied,* 345 U.S. 919, 73 S.Ct. 726, 97 L.Ed. 1352 (1953); *Steinberg v. United States,* 162 F.2d 120, 124 (5th Cir.), *cert. denied,* 332 U.S. 808, 68 S.Ct. 108, 92 L.Ed. 386 (1947).

Appellant also contends that the district court did not give the jury an adequate limiting instruction regarding the FBI statements. He may be correct in arguing that the court's brief instruction was insufficient to prevent the jury from considering the statements as substantive evidence. However, we think the jury was entitled to consider the statements substantively, as provided in Federal Rule of Evidence 803(24):

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (24) *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Federal Rule of Evidence 801(d)(1), as proposed by the Supreme Court, would have permitted all prior inconsistent statements to be used as substantive evidence.[5] The House Judiciary Committee substantially

---

**4.** Rule 607 provides that: "The credibility of a witness may be attacked by any party, including the party calling him." Rule 611 in pertinent part provides:

> (c) *Leading questions.* Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

We do not mean to suggest that rules 607 and 611 allow the government to impeach its own witnesses without restriction. *See* Graham, *Examination of a Party's Own Witness Under the Federal Rules of Evidence,* 54 Tex.L.Rev. 917 (1976) (suggesting that common law restrictions of surprise and damage be applied to government impeachment of its own witnesses under rule 607).

**5.** *See* Proposed Rules of Evidence for United States Courts and Magistrates, 56 F.R.D. 183, 293 (1973). The Court held such a rule constitutional in *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

altered rule 801(d)(1) by adding a requirement that the prior statement must have been subject to cross-examination. H.R. Rep. No. 93–650, U.S.Code Congressional and Administrative News, 93rd Cong., 2d Sess., pp. 7086–87 (1973). The Senate committee recommended reinstatement of the Supreme Court rule, S.Rep. No. 93–1277, U.S.Code Congressional and Administrative News, 93d Cong., 2d Sess., pp. 7062–63 (1974), and the conference committee adopted a compromise allowing prior inconsistent statements to be used substantively when the statement was given under oath subject to the penalty of perjury at a "proceeding" or in a deposition. Conf.Rep. No. 93–1597, U.S.Code Congressional and Administrative News, 93d Cong., 2d Sess., pp. 7103–04 (1974). The Senate, in addition to broadening rule 801(d)(1), added subsection 24 to rule 803, S.Rep. No. 93–1277, *supra,* at pp. 7065–66. From this legislative history it is clear that the House was unwilling to make so radical a departure from prior law as that proposed by the Supreme Court, while the Senate wanted courts to be more flexible in treating statements traditionally regarded as hearsay not falling within any conventional exceptions.

That rule 803(24) is a viable basis for admission of extrajudicial statements is illustrated by the recent Second Circuit case of *United States v. Iaconetti,* 540 F.2d 574 (2d Cir. 1976). Iaconetti was convicted for solicitation and receipt of a bribe. The government's chief witness was Michael Lioi, who testified that Iaconetti solicited a bribe from him on February 10. Lioi told Iaconetti that he would have to speak to his associates about the matter. Iaconetti at trial contended that Lioi in fact had sought to bribe him. To corroborate Lioi's account of the transaction, the government called Lioi's associates, Stern and Goldman, to relate the statements Lioi made to them on February 10 based on his conversation with Iaconetti earlier that day. District Judge Weinstein, a noted commentator on the law of evidence, held that the extrajudicial statements of Lioi to his associates were admissible under rule 803(24). *United States v. Iaconetti,* 406 F.Supp. 554, 558–60

(E.D.N.Y.1976). The Second Circuit affirmed, agreeing that the statements possessed the requisite indicia of reliability.

In applying the criteria of rule 803(24), Judge Weinstein concluded that the availability of the declarant for cross-examination at trial and the fact that the statement was made immediately after the criminal event and to persons with whom it was appropriate to communicate provided the "circumstantial guarantees of trustworthiness." Further, he concluded that the statements were offered "as evidence of a material fact" because they were relevant to a material proposition of fact. Judge Weinstein decided that the statements were "more probative on the point for which [they were] offered than any other evidence which the proponent [could] procure through reasonable efforts" since what was intended by Iaconetti depended substantially on Lioi's understanding, which he had related to his associates. Finally, the judge said that where there is a clear conflict of credibility, the "jury [is] entitled to all the help available on the point." 406 F.Supp. at 559.

Applying those criteria to this case, we find strong indicia of reliability as to all three FBI statements. First, the declarants were available for cross-examination by the party against whom the statements were offered. Indeed, the declarants were given ample opportunity upon examination by both the government and the appellant's counsel to explain any errors in the statements. We agree with Judge Learned Hand's observation that when the jury decides the truth is not what the witness says now but what he said before, they are still deciding from what they see and hear in court. *See DiCarlo v. United States,* 6 F.2d 364, 367–68 (2d Cir. 1925). Second, the statements were made only a few hours after the events related and were transcribed shortly thereafter. Third, the declarants admitted that they knowingly and voluntarily signed forms waiving the right to remain silent. Perhaps most significantly, for all practical purposes they admitted making the statements. In addition, the

fact that all three statements are quite similar is some evidence of reliability, at least where the statements are made very soon after arrest and before the declarants are able to agree on one version.[6]

It is true that all three declarants suggested that they were motivated to make the statements by the hope that their charges would receive more favorable treatment. However, that motive arose only from a general hope, not from any specific "deal" the government made. There may be cases where government inducements to obtain statements strongly suggest unreliability, but in light of the other circumstances here and the vagueness of the alleged inducement, this is not such a case. Likewise, the evidence that the statements were made under the influence of drugs is slight and is effectively rebutted by the declarants' conduct in dealing with Pogue, by their admissions that they knowingly made the statements and signed waiver forms without coercion or duress, and by the testimony of agents Noblitt and Kennedy regarding their demeanor after arrest.

In addition, the statements satisfied the requirement that they be offered as evidence of a material fact. The material issue at trial was whether Leslie simply went along for the ride or whether he initiated and directed the transaction. The FBI statements clearly tended to show that Leslie was the initiator and that he controlled the Vega during the trip. Further, the statements were more probative on that issue than other evidence the prosecutor could procure. Aside from Mr. Pogue, who arranged the purchase from "Dave," the declarants were apparently the only source of information about who planned the trip and knew the car was stolen. Finally, the interests of justice were best served by introduction of the statements, since the evidence was conflicting and, as Judge Weinstein said in *Iaconetti,* the jury could use all the help it could get.

The record does not indicate whether the government complied with the notice requirement of rule 803(24). Even if it did not comply, appellant was not harmed, since his counsel had a fair opportunity to meet the statements. Defense counsel undoubtedly expected the prosecution to call one or more of those co-defendants who had originally plead guilty with Leslie. Counsel thoroughly examined Gayle, Lynch, and Rogers as to the effect of drugs on their mental condition at the time of the statements and as to any inducements that may have motivated them. In addition, we agree with the statement of the Second Circuit in *Iaconetti* that:

> While strict compliance with the rule is thus lacking, we agree with Judge Weinstein that the defendant was given sufficient notice here, and that some latitude must be permitted in situations like this in which the need does not become apparent until after the trial has commenced. The fact that defendant did not request a continuance or in any way claim that he was unable adequately to prepare to meet the rebuttal testimony further militates against a finding that he was prejudiced by it. 540 F.2d at 578.

Appellant also contends that the district court erred in allowing the prosecutor to ask Gayle, Lynch, and Rogers whether they had plead guilty, that the prosecution was allowed in effect to prove guilt by association. Federal Rule of Evidence 609(a) states the general rule that the credibility of a witness may be attacked by

---

**6.** These factors distinguish this case from *United States v. Sisto,* 534 F.2d 616 (5th Cir. 1976), in which we held that the trial court had committed plain error by failing to instruct the jury that prior statements allegedly made by the defendant's accomplice were admissible for impeachment only. In *Sisto* the only evidence that the statements were made was the testimony of a government agent. The alleged declarant categorically denied having made the statements, and there was no evidence of a writing or transcription. The House Judiciary Committee was no doubt concerned about exactly this problem of a possible "manufactured" prior statement being used against a criminal defendant when it rejected rule 801(d)(1) as proposed by the Supreme Court. Once a witness has admitted making the prior statement and only disputes the truth of its contents, however, there is no problem of a *contrived* extrajudicial statement getting before the jury for use as substantive evidence.

cross-examining the witness concerning a felony conviction. *United States v. Fleetwood,* 528 F.2d 528, 532 (5th Cir. 1976). *See also United States v. Bryza,* 522 F.2d 414, 425 (7th Cir. 1975); *United States v. Harrell,* 436 F.2d 606, 614 (5th Cir. 1970). In this case the government was not impeaching its own witnesses, but the court's witnesses. The government clearly had reason to try to impeach their credibility. Although a cautionary instruction is preferable, the failure to give one is not necessarily reversible error. *United States v. Johnson,* 455 F.2d 311, 315–16 (5th Cir. 1972). In this case the court's failure to give a cautionary instruction did not prejudice appellant. This is not a case where the jury would tend to view those charged as all guilty or all innocent. Much of the testimony tended to show that perhaps one or two men initiated the transaction and that the others simply went along for the ride. The question then became whether Leslie was among the former or the latter group. Introduction into evidence of the guilty pleas arguably tended to support appellant's contention that he was an innocent fellow traveler. Indeed, Gayle's guilty plea supported his direct testimony at trial that he was the one who stole the car and made arrangements for its sale. We cannot conclude that appellant was prejudiced thereby.

In summary, we conclude that the evidence was sufficient for the jury to find appellant guilty, even without considering the FBI statements substantively. The court acted within the scope of its discretion in calling appellant's companions as court witnesses. The jury was entitled to consider the FBI statements for the truth of their contents. The declarants admitted making the statements and did not assert any error in transcription. They had ample opportunity to explain at trial the inconsistency between those statements and their trial testimony. The jury could observe their demeanor to assess the truthfulness of each version. The witnesses' guilty pleas were relevant to their credibility, and the possibility of guilt by association is slight in the circumstances of this case.

In addition to the alleged errors discussed above, appellant contends that the trial court committed these errors: overruling appellant's motion to dismiss one count of the indictment, denying appellant's request for a particular question to the jury on voir dire, failing to permit discovery of the name of the alleged informant, limiting cross-examination of a government witness, admitting the testimony of Pogue regarding the telephone conversation with "Dave" and the prior purchase of a car from the appellant, and refusing to give jury instructions requested by appellant. Having considered all of these contentions, we find them to be without merit.

JUDGMENT AFFIRMED.