RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0099p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MARTY LEVINGSTON,

        *Petitioner-Appellant*,

  *v.*

WARDEN, WARREN CORRECTIONAL INSTITUTION,

        *Respondent-Appellee*.

No. 17-3167

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:12-cv-00724—Michael R. Merz, Magistrate Judge; Timothy S. Black, District Judge.

Decided and Filed:  May 30, 2018

Before:  SUTTON, McKEAGUE, and DONALD, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Paul M. Laufman, LAUFMAN & NAPOLITANO, Cincinnati, Ohio, for Appellant.  Mary Anne Reese, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

SUTTON, Circuit Judge.  Someone murdered Michael Grace.  An eyewitness identified Marty Levingston as the assailant, or at least one of them.  And a jury convicted him. Levingston filed a habeas petition claiming that the trial court allowed the jury to use the eyewitness's testimony in violation of the Confrontation Clause and the Due Process Clause. Because the Ohio courts permissibly rejected those claims, we affirm.

More than ten years ago, Savana Sorrells looked out of her cousin's second-story apartment window. In a parking lot across the street, she saw two men arguing. She knew both of them—David Johnson and Michael Grace—from the neighborhood. Johnson knocked Grace to the ground. Suddenly a third man, Marty Levingston, whom she also knew from the neighborhood, approached from the shadows. Although a car obstructed her view of Grace's fallen body, Sorrells saw one thing: Johnson and Levingston standing over him, followed by flashes of fire coming from the guns in their hands. Sorrells heard about ten shots. She never saw Grace fire a gun or move after the shots were fired.

Sorrells did not want to get involved at first. But her mother convinced her it was the right thing to do. Ten days later, she contacted the police and told them what she had seen. Speaking with Detective Matt Thompson, Sorrells identified Johnson and Levingston as the shooters and said she was "[o]ne hundred percent" sure it was them. R. 10-10 at 43. Ten days after that, she told a grand jury the same thing. Sorrells asked police to place her and her mother in a witness protection program and move her to a different school. The government charged Levingston with murder, felonious assault, and tampering with evidence. Ohio Rev. Code §§ 2903.02(A), 2903.11(A)(2), 2921.12(A)(1).

Sorrells did not appear at a pre-trial hearing. Prosecutors tracked her down, and Sorrells repeated that she was certain that she saw Johnson and Levingston shoot Grace. But at the rescheduled hearing in front of Levingston, Sorrells equivocated. For the first time, she expressed doubt about whether Levingston was one of the shooters. And for the first time, she said she was not wearing her glasses or contacts that night.

At trial, the court called Sorrells as its own witness so that both parties could cross-examine her. *See* Ohio R. Evid. 614(A). During the government's cross-examination, Sorrells said that she changed her testimony based on what other people were telling her and admitted she was afraid "of being contacted or influenced." R. 10-5 at 87. During Levingston's cross-examination, Sorrells said that she genuinely grew unsure over what she saw. Detective Thompson testified about his interview with Sorrells and the jury heard a recording of their conversation. The court instructed the jury that it could consider Sorrells' prior statements to the police and the grand jury "as testified by her" only to impeach her credibility. R. 10-11 at 165.

But it said the jury could consider the prior statements and the recorded conversation through Detective Thompson's testimony as substantive evidence of Levingston's guilt under an exclusion to Ohio's hearsay rule. *See* Ohio R. Evid. 801(D)(1)(c).

The jury found Levingston guilty. He appealed, arguing that the trial court violated his confrontation rights by instructing the jury that it could consider Sorrells' earlier statements as substantive evidence. The Ohio Court of Appeals rejected this argument and some others as well. *State v. Levingston*, 2011 WL 1331883 (Ohio Ct. App. Apr. 8, 2011). The Ohio Supreme Court declined to hear the appeal. *State v. Levingston*, 953 N.E.2d 843 (Ohio 2011) (mem.).

Levingston filed a federal habeas petition. The district court stayed the action to permit Levingston to exhaust his post-conviction remedies under Ohio law. In his post-conviction petition, Levingston argued that, when the trial court allowed the government to use Sorrells' statements as substantive evidence, it violated his right to confront the witnesses against him under the Sixth and Fourteenth Amendments and his right to due process under the Fifth and Fourteenth Amendments. The trial court denied his claims. The Ohio Court of Appeals rejected the petition as procedurally barred, and the Ohio Supreme Court again declined to hear the appeal.

The district court rejected the habeas petition and granted Levingston a certificate of appealability with respect to both claims.

Federal law prohibits us from granting a habeas petition adjudicated on the merits in state court unless the state court unreasonably applied Supreme Court precedent or relied on unreasonable fact findings. 28 U.S.C. § 2254(d). Levingston has not met this standard with respect to either of his claims.

*Confrontation Clause.* Levingston maintains that the state trial court violated his Sixth Amendment right to be confronted with the witnesses against him by permitting the government to introduce Sorrells' testimonial statements as substantive evidence. Levingston acknowledges that he had the opportunity to cross-examine Sorrells *at trial*. But that by itself does not suffice, he insists, because her prior "testimony was not subject to cross examination" *at the time* she made her out-of-court statements. Br. of Appellant 9. The factual premise is correct; she was

not cross-examined when she gave her out-of-court statements to police. But the legal conclusion is not; the Confrontation Clause contains no such requirement.

By its words, the Sixth Amendment protects a defendant's right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Sorrells was a "witness[] against" Levingston. And Levingston had the opportunity "to be confronted with" her at trial, "where he could cross-examine [her] and try to expose [her] accusation as a lie." *Crawford v. Washington*, 541 U.S. 36, 62 (2004). That Sorrells may have been a "witness" against Levingston in one sense earlier (at the time she spoke to police) does not matter so long as Levingston had the chance to cross-examine her about the statements at trial.

Many Confrontation Clause cases arise in this context. Take *Crawford*. It agreed that statements by a witness to police officers during an interrogation are testimonial. 541 U.S. at 52, 65. But it did not demand that they be subjected to cross-examination at the time the witness uttered them on pain of exclusion. To the contrary, it held that a court may admit the statements without violating the Sixth Amendment if the witness is "test[ed] in the crucible of cross-examination" at trial. *Id.* at 61.

Keep in mind that the nature of a police investigation does not permit, or at most would rarely permit, a cross-examination by the suspect's attorney at the time of the initial statement. It is an investigation after all. At the time of the interview, the police may not yet know whom they plan to ask a grand jury to indict. Pre-indictment, there is no defendant and (usually) no attorney to conduct the cross-examination.

In rejecting a challenge identical to Levingston's, albeit in a pre-*Crawford* setting, the Court put the point this way: "[T]he Confrontation Clause does not require excluding from evidence the prior statements of a witness who concedes making the statements, and who may be asked to defend . . . his prior and his present version of the events in question, thus opening himself to full cross-examination at trial as to both stories." *California v. Green*, 399 U.S. 149, 164 (1970).

In taking a similar approach, the Ohio Court of Appeals did not unreasonably apply clearly established Supreme Court precedent. To the contrary, the court got it just right.

Also unavailing is Levingston's apparent claim that the Ohio courts misapplied Ohio law and permitted the introduction of unreliable evidence. For one, state hearsay rules and the Confrontation Clause are not coterminous. *See Green*, 399 U.S. at 154–56, 163 n.15; *Crawford*, 541 U.S. at 51. For another, the trial court's evidentiary rulings, just like other "state-court determinations on state-law questions," may not form the basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

*Due Process Clause.* Levingston's back-up argument—that the instruction violated due process—falls short too. To prevail, he must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten*, 414 U.S. 141, 147 (1973), and that the state court unreasonably rejected the claim.

We doubt that the trial court's instruction was ailing at all. But even if it was, "the category of infractions that violate 'fundamental fairness'" has been defined "very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). The Court has never invalidated an instruction like this one, and it has repeatedly rebuffed due process challenges to erroneous jury instructions. *See, e.g.*, *Waddington v. Sarausad*, 555 U.S. 179, 192–94 (2009); *Henderson v. Kibbe*, 431 U.S. 145, 152 (1977).

Levingston does not cite a single Supreme Court decision to the contrary. He instead points us to a Fifth Circuit decision that (he says) suggests that the use of prior inconsistent statements as substantive evidence may violate due process. *See United States v. Leslie*, 542 F.2d 285 (5th Cir. 1976). But *Leslie* says no such thing. It merely construes Rule 803(24) of the Federal Rules of Evidence, and the phrase "due process" never takes the stage. *Id.* at 289–91. One thing more: Even if we pretended that *Leslie* contained a Due Process holding, it is not "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). It thus "cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012).

We affirm.