**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William LEDEE, Defendant-Appellant.**

No. 76–1678.

United States Court of Appeals,
Fifth Circuit.

March 31, 1977.

Rehearing Denied April 29, 1977.

Denis Dean, Eugene P. Spellman, Miami, Fla., for defendant-appellant.

John W. Stokes, U. S. Atty., Gale McKenzie, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before GEWIN, GEE and FAY, Circuit Judges.

FAY, Circuit Judge:

Appellant, William Ledee, brings this appeal from a judgment of conviction entered after a jury found him guilty of six counts of causing to be transported in interstate commerce falsely made and forged securities in violation of 18 U.S.C. § 2314.

Appellant raises six different points of error in this appeal. The three we think merit discussion are:

1. Whether the court erred in failing to give appellant's requested voir dire questions pertaining to reasonable doubt, presumption of innocence, and burden of proof.

2. Whether the court erred in refusing to allow the appellant to present evidence before the jury that he had been previously acquitted on a charge involving a check which the government was permitted to introduce as part of the alleged scheme.

3. Whether the court erred in denying the appellant's request for a continuance in order to produce an F.B.I. handwriting examiner. Each is discussed below.

In 1974, appellant deposited seven checks drawn on the Pan American Bank of Tampa in Tampa, Florida into an account which appellant maintained at the Trust Company Bank in Atlanta, Georgia. The government proved that at the time these deposits were made appellant knew that the account in the bank of Tampa was closed and that the checks were forged or falsely made. Appellant was convicted on six of the seven counts charged and sentenced to six years incarceration. We affirm.

The first point appellant asserts is that the court below erred in failing to give appellant's requested voir dire questions pertaining to reasonable doubt, presumption of innocence and burden of proof. The questions requested, objected to by the government and refused by the court are set out in the margin.[1] Instead, the court asked the prospective jurors:

(25) Do each of you understand an indictment has been returned in this case, and is not to be considered by you as evidence or indication of guilt on the part of the Defendant, WILLIAM LEDEE, but rather the indictment is only a vehicle for bringing the person before the Court to stand trial?

[1] (24) Do each of you understand the Government has the burden of proving the Defendant guilty beyond and to the exclusion of a reasonable doubt, and that a reasonable doubt is not a mere fanciful or imaginary doubt, but a doubt to which you can give a reason?

Now the Court will instruct you, as most of you know who have served on juries, concerning all the various elements of law and the burden of proof that is involved. Are there any of you who feel that for any reason you cannot follow the law as stated to you by the Court in instructions. Are there any of you who have any reason to believe that, if selected as juror, you could not follow the law as stated by the Court, whether you disagree with the law or not. Are there any of you who feel you could not follow the law.

The instructions read to the jury at the close of the case included the law embodied in the appellant's requested questions.

Appellant raises the issue of whether, during voir dire of prospective jurors, the court must, upon request, inquire whether the jurors can accept certain propositions of law.

■ Rule 24(a) of the Federal Rules of Criminal Procedure states:

The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the attorney for the government to supplement the exami-

nation by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper.

This rule allows the trial judge wide discretion as to the scope and conduct of voir dire examination and the decisions in this circuit have given the rule just such a liberal interpretation.[2] In particular the Fifth Circuit and several other circuits as well have held that it is not an abuse of that discretion to refuse to allow inquiries of jurors as to whether they can accept certain propositions of law.[3]

In *Stone v. United States*, 324 F.2d 804 (5th Cir. 1963) defense counsel was personally permitted to question the prospective jurors during voir dire examination. He inquired of the prospective jurors,

. . . if at the close of this case the evidence appears to be well balanced, or even, would you tend to favor one side or the other?

The court immediately cautioned that questions that call for conclusions of law must first be addressed to the court. The court refused to allow the question in that form and then asked the prospective jurors if they would accept the law as the judge gives it to them. On appeal the Fifth Cir-

(26) Do each of you understand that in a criminal trial the Defendant is not required to present any testimony and does not have to testify in his own behalf, and that this right is given him by the Constitution of the United States?

(27) Would any of you hold it against WILLIAM LEDEE if, in fact, he did not testify? In other words, are there any of you that feel that in a criminal case the defendant should testify despite the fact that he is not required to?

(40) Can each of you accept the proposition of law that a defendant is presumed to be innocent, that he has no burden to establish his innocence, and that he is clothed throughout the trial with this presumption?

2. *United States v. Hill*, 500 F.2d 733 (5th Cir. 1974), *cert. den.*, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975); *United States v. Eastwood*, 489 F.2d 818 (5th Cir. 1973); *United States v. Goodwin*, 470 F.2d 893 (5th Cir. 1972), *cert. den.*, 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973); *Tillman v. United States*, 406 F.2d

930 (5th Cir. 1969); *Bellard v. United States*, 356 F.2d 437 (5th Cir. 1966), *cert. den.*, 385 U.S. 856, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966); *Fox v. United States*, 296 F.2d 217 (5th Cir. 1961), *per curiam, cert. den.*, 369 U.S. 888, 82 S.Ct. 1160, 8 L.Ed.2d 287 (1962).

3. *Stone v. United States*, 324 F.2d 804 (5th Cir. 1963), *cert. den.*, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); *United States v. Gillette*, 383 F.2d 843 (2nd Cir. 1967); *United States v. Wooten*, 518 F.2d 943 (3rd Cir. 1975), *cert. den.*, 423 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975); *United States v. Cosby*, 529 F.2d 143 (8th Cir. 1976); *United States v. Crawford*, 444 F.2d 1404 (10th Cir. 1971), *per curiam, cert. den.*, 404 U.S. 855, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971). Appellant cites *United States v. Blount*, 479 F.2d 650 (6th Cir. 1973) which holds to the contrary and is not the law in this circuit.

cuit agreed with the trial court's actions stating:

> The procedure to be followed in a voir dire examination of jurors in a criminal case is within the discretion of the trial court. (Citations omitted)

> The trial court did not permit the questioning of jurors with respect to propositions of law and its action was a proper one.

*Supra,* p. 807.

■ We therefore find no error in the decision of the trial court to sustain the government's objection to the five requested questions and recognize that the weight of authority supports this ruling. However, we must acknowledge that voir dire examination in both civil and criminal cases has little meaning if it is not conducted by counsel for the parties.

> A judge cannot have the same grasp of the facts, the complexities and nuances as the trial attorneys entrusted with the preparation of the case. The court does not know the strength and weaknesses of each litigant's case. Justice requires that each lawyer be given an opportunity to ferret out possible bias and prejudice of which the juror himself may be unaware until certain facts are revealed.[4]

The federal and state courts employ different methods of voir dire examination. In the federal courts questioning is generally done by the judge and counsel may submit questions for the jury which the judge may or may not use. In most states the judge may ask introductory questions and then counsel for the parties may pursue their examination with reasonable limits on time and scope of the subject matter.[5] The American Bar Association Commission on Standards of Judicial Administration suggests a procedure somewhere in between, that is:

> It should partake of the "federal" method in having the judge carry the burden of questioning, thus realizing economies of time and achieving an implicit identification of the jury as a neutral body. It should partake of the "state" method in affording counsel reasonable opportunity for direct questioning of jurors individually. In situations where the jurors may have previous information about the case, experience and research clearly indicate the importance of voir dire by counsel as a means of restoring an impartial attitude. The same opportunity should be afforded where the jurors are likely to have strong predisposition arising out of the nature of the case itself.[6]

■ Even though the assignment of error in the case was the question of allowing the jury to be questioned as to propositions of law and not the question of allowing counsel to conduct voir dire we believe, after considering both, the real issue is whether the voir dire examination uncovers possible prejudice and bias of any juror so that a fair and impartial jury may be impaneled. Peremptory challenges are worthless if trial counsel is not afforded an opportunity to gain the necessary information upon which to base such strikes.

■ The second assignment of error is whether the court below erred in refusing to allow appellant to present evidence before the jury that he had been previously acquitted on a charge involving a check which the government was permitted to introduce to show a course of conduct or scheme by appellant.

There were two trials of this case, the first ended in a hung jury and the second in a conviction. The superceding indictment which precipitated the second trial was different from the first indictment in two ways. First, the spelling of the name of the maker of all seven checks was changed from "Sumya te Quira" to "Siempre te Quiero". Second, an additional date was

---

**4.** Frates & Greer, *Jury Voir Dire: The Lawyer's Perspective,* 2 A.B.A. Litigation No. 2 (1976).

**5.** American Bar Association Standards, Trial Courts, § 2.12 (1976).

**6.** American Bar Association Standards, Trial Courts, § 2.12 (1976).

added in count seven. The seventh count on the first indictment alleged the check in question had a single issue date of May 15, 1974. The seventh count in the second indictment alleged the check in question had two issue dates—May 15, 1974 and June 15, 1974.

During the first trial, at the close of all the evidence, the trial judge granted a judgment of acquittal as to Count VII because the government failed to introduce evidence to support that charge; that is, the check offered in evidence to prove Count VII had two issue dates and was therefore different from the check described in Count VII of the indictment. Appellant was properly charged in the second indictment under Count VII but for reasons unknown to this court the government voluntarily dismissed Count VII at the opening of the second trial.

Under these circumstances it is doubtful that appellant was acquitted of an offense involving the check with two issue dates that was admitted into evidence.[7] Assuming arguendo that appellant was acquitted on Count VII involving the check, the admission into evidence of that check without allowing proof of acquittal was harmless error beyond a reasonable doubt in view of the overwhelming evidence of guilt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Briefly, facts relevant to the third assignment of error surrounding the requested continuance to obtain the government's handwriting examiner are as follows:

A few days prior to the second trial, defense counsel received a copy of a handwriting analysis conducted by the F.B.I. laboratory in Washington, D. C. and prepared during the interval between the first and second trials. The result of the handwriting analysis was that no conclusion could be reached as to whether or not the person who signed the cards and letters (from appellant to his girlfriend) in evidence was the same individual who signed as the maker on the checks involved in the charges.

■■■ Appellant claims error because the government did not call to testify the handwriting examiner who prepared the report and the defense needed a continuance to call him. We cannot agree with this contention for the following reasons. First, the report was not admitted into evidence and testimony which would have been given by the F.B.I. handwriting examiner was stipulated to by the government and explained to the jury by the court.[8] Second, there was no promise by the government that *the same* handwriting examiner who prepared the report would be present. Another F.B.I. handwriting examiner was present (if needed) or appellant could have provided their own expert. Thus there was no obligation on the part of the government to produce the specific witness and no basis for appellant's reliance upon the government. The court did not abuse its discretion by denying appellant's request for continuance.

The court has reviewed all other assignments of error and finds them to be totally without merit. The conviction is affirmed.

7. The check described in Count VII of the second indictment was admitted into evidence to establish a continuing scheme but appellant does not claim this was error.

8. Court:
"Now, it is further stipulated that Government Exhibits 1 and 2 which are in evidence, which are check Nos. 751 and 753, were submitted to a handwriting expert of the Federal Bureau of Investigation in Washington, D. C., along with the exhibits which have been marked as Governments' Exhibits 11–A through 11–H, these letters containing handwritten letters, and that that expert, after examining those letters and examining the two checks in issue,

would testify, if present and under oath, that a definite conclusion was not reached as to whether these signatures on the front of Governments' Exhibits 1 and 2—was unable to reach a conclusion as to whether those signatures were prepared by William J. Ledee after having reviewed those and Exhibits 11–A through H due to the presence of distortion in portions of the questioned writing and the presence of unexplained handwriting characteristics.
In other words, the handwriting expert could not come to any conclusion as to whether Mr. Ledee or who wrote those two signatures. (Record on appeal, Vol. II, p. 214).