**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Wallace L. WILLIAMS,
Defendant-Appellant.**

No. 77–5297.

United States Court of Appeals,
Fifth Circuit.

May 19, 1978.

Rehearing Denied June 9, 1978.

**286**

Dick DeGuerin, Houston, Tex., for defendant-appellant.

James A. Canales, U. S. Atty., James R. Gough, George A. Kelt, Jr., James L. Powers, Mary L. Sinderson, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, AINSWORTH and MORGAN, Circuit Judges.

AINSWORTH, Circuit Judge:

Defendant Wallace L. Williams was indicted on September 26, 1976 on three counts of tax fraud for filing false income tax returns in that he understated miscellaneous income on his 1970 tax return and underreported gross receipts on his 1971 and 1972 tax returns, all in violation of 26 U.S.C. § 7206(1). Following a fourteen-day trial during which more than eighty witnesses were called, the jury found Williams guilty on all three counts. Williams was sentenced to consecutive three-year prison terms on Counts II and III followed by five years' probation conditioned on the payment of a $5,000 fine on Count I. On this appeal defendant raised objections to the conduct of the voir dire proceedings, to the admissibility in evidence of certain testimony and affidavits, to the prosecutor's closing argument, to the denial of a motion for acquittal and to certain jury instructions. We have carefully considered appellant's assignments of error but find them to be without merit, and affirm the conviction.

During the years in question Williams, Captain and Inspector (later Deputy Chief) of the Houston Police Department, operated a service which provided security guards. Several institutions, especially Southwestern Bell Telephone Company, desired extra security protection. At the same time, some policemen wanted additional employment to supplement their salaries. Williams, doing business as The Security Company, satisfied both these needs by arranging for police officers to work as security guards at the various establishments. Operating this company from his office in the police station, Williams, assisted by other officers, contracted to provide security, sought new business, assigned officers to work as guards, and supervised and paid the officers.

The record, considered in the light most favorable to the Government, *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), shows by abundant proof that Williams wilfully underreported

his gross income from the security service business on his tax returns. The returns did not include income from checks from clients payable either to Williams or to The Security Company. The amounts of these checks constituted gross income to Williams [1] and should have been reported on his tax returns even if he subsequently paid police officers who worked as guards with proceeds from these checks. There is also adequate evidence that Williams received substantial income from checks of security clients made payable to individual officers. Williams had another officer, George Bush, cash all the paychecks without the endorsement of the individual officers, pay the officers currently on duty, and return the remainder to Williams in one-hundred-dollar bills. Since Williams had complete control over these funds, the cashed checks represent gross income to him and the amounts thereof should also have been reported on his returns. Additionally, Williams had income from checks payable to other officers which were used in payment of Williams' bills. The gross income generated by these transactions exceeded the income reported for 1970 through 1972 by approximately $350,000.[2]

Williams was dissatisfied by a number of aspects of the trial which followed his indictment. He objected to the manner in which the trial judge conducted the voir dire examination of prospective jurors. Numerous witnesses were heard during the trial and many exhibits, including some affidavits, were admitted, occasionally over objections of the defense. At the close of the Government's case, Williams unsuccessfully moved for a judgment of acquittal.

Williams contended that the prosecutor's closing arguments were improper in suggesting that a large portion of Williams' unreported income was to be found in defendant's bank account. Finally, the trial judge refused to give several jury instructions as requested by the defense. We consider these objections in greater detail.

Williams first asserts that the voir dire examination of potential jurors conducted by the trial judge failed to provide sufficient information for intelligent exercise of challenges, either peremptory or for cause. However, we find that the trial judge's action was well within his "wide discretion as to the scope and conduct of voir dire examination." *United States v. Ledee,* 5 Cir., 1977, 549 F.2d 990, 992, *cert. denied,* 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188 (1977). Federal Rules of Criminal Procedure, Rule 24(a) explicitly authorizes the trial court to conduct the voir dire examination and to submit to the potential jurors "such additional questions [proposed] by the parties or their attorneys as it deems proper." The trial judge's failure to ask the requested questions is not an abuse of discretion if his overall examination, coupled with his charge to the jury, affords a party the protection sought. *See United States v. Goodwin,* 5 Cir., 1972, 470 F.2d 893, 898, *cert. denied,* 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973). The transcript of the voir dire examination reveals that the court provided the defendant with adequate protection by inquiring into such areas as possible bias against policemen and attitudes toward tax offenses. The trial court could rightly refuse to permit inquiries concerning potential jurors' under-

1. Williams contended that The Security Company was a partnership rather than a sole proprietorship. Conflicting evidence was presented to the jury on this issue. The jury was instructed, however, that if they found The Security Company was a partnership, Williams was required to report only his net income from the partnership.

2. In his testimony summarizing the Government's evidence, John Russell reviewed the evidence concerning checks either payable to The Security Company or payable to other officers but negotiated for Williams' benefit. On the basis of this evidence, Russell arrived at the gross income from The Security Company which Williams should have reported and the amount of gross income actually reported. For the period 1970 through 1972 these amounts are as follows:

| | Gross Income Properly Reportable | Gross Income Actually Reported | Difference |
|---|---|---|---|
| 1970 | $ 143,394.40 | $ 1,500.00 | $ 141,894.40 |
| 1971 | 193,953.18 | 33,339.10 | 162,614.08 |
| 1972 | 49,578.55 | 4,250.00 | 43,328.55 |
| | $ 386,926.13 | $ 39,089.10 | $ 347,837.03 |

standing of legal matters such as the comments of the prosecutor not being evidence or mistake of fact being a defense in tax cases. *See United States v. Ledee, supra,* at 992; *Stone v. United States,* 5 Cir., 1963, 324 F.2d 804, 807, cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964). These topics were properly covered in the final jury instructions of the court.

There were also objections by defendant to the admission in evidence of the affidavits of witnesses George Bush and Charles Munro. Bush, a Houston police officer who worked for Williams' security service, was questioned by IRS agents concerning the business. At the conclusion of the IRS's examination, Bush signed a lengthy affidavit summarizing his responses concerning The Security Company's operations. At trial, despite a grant of immunity, Bush testified differently in several respects from the facts set forth in his prior affidavit. As a result of this change in testimony, the Government offered Bush's affidavit into evidence. The trial court admitted the affidavit as substantive evidence over the defense's objection.

■ Under the circumstances of this case, the trial judge correctly admitted Bush's affidavit into evidence for substantive purposes as well as for the impeachment of Bush's testimony. In particular, this affidavit was within the exception to the hearsay rule for

statement[s] not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Federal Rules of Evidence, Rule 803(24). In applying Rule 803(24) to this case we must note that the "rules shall be construed to secure fairness in administration, elimi-

nation of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Federal Rules of Evidence, Rule 102.

Rule 803(24) has been accepted as the basis for introducing extrajudicial statements. *See United States v. Iaconetti,* 406 F.Supp. 554, 558–60 (E.D.N.Y.1976) (Weinstein, J.), aff'd 2 Cir., 1976, 540 F.2d 574. In this case Bush's affidavit has circumstances of reliability at least equal to those found sufficient for admitting prior statements in *United States v. Leslie,* 5 Cir., 1976, 542 F.2d 285. During his testimony Bush admitted making the prior affidavit. The affidavit was made closer in time to the actual events than was the trial testimony; hence, the possibility of lost recollection was reduced. The agents present during the questioning testified concerning Bush's willingness to give the statement. The affidavit contains many handwritten alterations by Bush indicating that he carefully examined the final text of the affidavit to ensure its correctness. Finally, although the jury was not present to observe Bush's demeanor when he gave the affidavit, Bush testified at trial and was vigorously cross-examined concerning the affidavit. Thus, in deciding whether the prior affidavit or the testimony at trial was more accurate, the jury could rely on their opportunity to observe Bush's demeanor during his testimony. *See DiCarlo v. United States,* 2 Cir., 1925, 6 F.2d 364, 367–68 (Learned Hand, J.), cert. denied, 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168 (1925).

Bush's affidavit also complied with the other conditions set forth in Rule 803(24). Bush's role in the check cashing operation is obviously material to determining Williams' gross income for the tax years in question since Bush stated that, on Williams' instructions, he cashed checks payable to other officers and returned the proceeds to Williams after paying some of the police officers. Finally, the interests of justice were best served by providing the jury with as much information as possible concerning

the nature of The Security Company and Williams' role in that business.

While Bush's affidavit concerns admissibility of a prior inconsistent affidavit, Munro's affidavit, on the other hand, involves admissibility of a prior consistent statement. Munro, who acted as Williams' second-in-command for The Security Company, gave the same responses at trial as he previously stated in his affidavit. The defense, however, attempted to discredit Munro's testimony by showing that threats of prosecution against him had influenced his testimony. The prosecution then introduced the affidavit as substantive evidence in support of Munro's testimony.

■ Usually a prior consistent statement is not admissible because mere repetition does not enhance the veracity of the statement. However, prior statements have traditionally been admissible to reestablish the credibility of a witness who has been impeached. Federal Rules of Evidence, Rule 801(d)(1) expands this common law rule by excluding such statements from the definition of hearsay and permitting their introduction as substantive evidence.

A statement is not hearsay if—(1) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, . . . ..

Federal Rules of Evidence, Rule 801(d)(1)(B).

■ Munro's affidavit was admissible by virtue of this exclusion from the hearsay rule. Munro testified at the trial and was also subject to cross-examination concerning the statement. Defense counsel attempted to impeach Munro through questions suggesting that Munro's motive in testifying was to escape prosecution himself. The prior affidavit was therefore admissible to rebut this attack on Munro's credibility.[3]

■ There was no error in the admission of the testimony of the summary witness, Internal Revenue Agent John Russell. In particular, the prosecution did not knowingly offer false testimony when Russell testified during cross-examination "[the officers] never told [him] that they were being charged for overtime" when working for The Security Company on their normal police duty hours.[4] To prevail on such a contention the defendant must show that the statement was actually false, that it was material and that the prosecutor knew it was false. *See Griffith v. United States*, 5 Cir., 1976, 535 F.2d 320. The record does not support Williams in the establishment of any of these requirements. In addition, our review of the record had not disclosed any instance where Russell's testimony went beyond the evidence developed at trial.

■ The next objection relates to the prosecutor's closing argument and to the court's refusal to grant an evidentiary hearing on defendant's motion for new trial, as to the effect of the prosecutor's remarks. The defense in its closing argument contended that while the Government alleged

**3.** Williams argues that the prior affidavit should not have been admitted to rebut a charge of improper motive since Munro also risked prosecution at the time he made the affidavit. However, the trial court was correct in admitting Munro's affidavit since this Circuit has held that a prior statement can be used to rebut a charge of improper motive even though the statement was made after the alleged motive arose. In *United States v. Gandy*, 5 Cir., 1972, 469 F.2d 1134, the defense attempted to impeach a witness by establishing that the witness held a grudge against the defendant resulting from a prior altercation between the witness and the defendant. A prior statement consistent with the testimony at trial was admitted to rehabilitate the witness although the statement had been given after the altercation had occurred and the motive for false testimony had arisen.

**4.** Instead of being paid for working overtime, Houston police were given compensatory time off. Williams contends that when officers worked for The Security Company during their normal duty hours they charged the time against their accumulated overtime.

that Williams received a large sum of unreported income, his modest lifestyle gave no indication of having received such income. In reply the prosecutor stated:

Also, the defense counsel wants to know where all of this money went, the defendant's lifestyle was modest. We are claiming he made a small fortune, almost $400,000 over a three year period, where did the money go? If you will take a look at Exhibit 100 and Exhibit 100–A from the South Main Bank [Williams' bank accounts], the exhibits that the defendant did not show Mike Harrell, the auditor, you will see where $225,000 of it went.

The defense contends that this statement was improper since no evidence was introduced to show how the money got into the account.

This contention is without merit. Williams' bank statements were in evidence. The prosecutor merely called to the jury's attention an inference that could be drawn from those bank statements, which he may properly do in response to the defense counsel's closing argument. *See Samuels v. United States*, 5 Cir., 1968, 398 F.2d 964, 969, *cert. denied*, 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969). Since the remarks themselves were not incorrect, the failure to conduct an evidentiary hearing is not erroneous.

█ Williams further contends that the evidence was insufficient to submit Counts II and III for tax years 1971 and 1972 to the jury. In particular, the defendant argues that the evidence was insufficient to show that The Security Company was a sole proprietorship with all of the income thereof attributable to Williams, or that Williams was aware of the amount of gross income to be reported. It is well settled that a jury verdict must be sustained by an appellate court "if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The jury had evidence before it on which it could find that The Security Company was a sole proprietorship. Munro denied that he was a partner in the enterprise. Williams handled business transactions of the company, such as signing contracts, as if he was the sole proprietor. Williams also sent a letter to E. F. Hutton stating that The Security Company was a sole proprietorship. Similarly, evidence of cash and checks received by Williams gave the jury sufficient information to conclude that Williams was well aware that his gross income exceeded the amount he reported.

█ The remaining objections deal with the trial judge's instructions to the jury. First, we consider whether the instruction with respect to Count I of the indictment was correct in stating that the jury need only find that Williams' gross income, rather than his net income, exceeded the amount reported. In relevant part the indictment charged that Williams

did not believe [his 1970 tax return] to be true and correct as to every material matter in that the said return reported as miscellaneous income at line 39, Part II, page 2, income from security work from various sources in the amount of $1,500, whereas, he then and there well knew and believed, he received substantial income from security work from various sources in addition to that heretofore stated.

The jury was also instructed that Williams would be guilty as charged in the indictment if the gross amount of his income exceeded that stated in his return:

If you find that the defendant did fail to report a substantial amount of gross income from this security operation, you are instructed that he was required to report this income on his tax returns regardless of how many expenses may have been incurred. In order to prove the defendant guilty of Counts I, II and III, it is not necessary for the United States to show that the defendant owed additional taxes at the end of each year.

We find no merit in the contention that the jury should have been instructed that Williams was only obligated to report net income. United States Code, Title 26, Section 7206(1) under which Williams was charged reads:

Any person who—(1) Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony.

Under this provision a person may be convicted if he underreports the amount of gross income even though there may be some offsetting expenses. In *McClanahan v. United States*, 5 Cir., 1961, 292 F.2d 630, 633–34, *cert. denied*, 368 U.S. 913, 82 S.Ct. 193, 7 L.Ed.2d 130 (1961), this Court approved jury instructions stating that if the defendant failed to report gross gambling winnings, even if those winnings were reduced by losses, a guilty verdict should be returned. The expenses that may be deducted to reach net income must be deducted separately from the statement of gross income.

The court's instructions also considered the possibility that The Security Company was a partnership in which case Williams would be liable for reporting only his share of the partnership income. The jury was instructed that

One of the issues which you must decide is whether The Security Company was a sole proprietorship or a partnership. If you believe that The Security Company was a partnership, then you are instructed that the proper method of reporting partnership income is to file a partnership informational return. The individual income tax return need not report the gross receipts of the partnership. If you find that The Security Company was a sole proprietorship, the individual income tax return should contain the gross income.

Together these instructions correctly reflect Williams' obligation to report his gross income and no error was committed by the court.

■ Williams also asserts as error the trial court's refusal to give instructions concerning the defendant's reliance on David Collier to prepare his return, on Munro to supply the necessary information, and on advice that he need only report his net income. The refusal to give requested instructions is reversible error "if, but only if, (1) it is in itself a correct charge, (2) it is not substantially covered in the main charge, and (3) it is on such a vital point in the case that the failure to give it deprived defendant of a defense or seriously impaired its effective presentation." *Pine v. United States*, 5 Cir., 1943, 135 F.2d 353, 355, *cert. denied*, 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 439 (1943). First, it is unclear if the requested charges were correct since the record does not unequivocally show that Williams relied on others in the preparation of his returns. While there is some testimony that Munro and Collier had a role in preparing Williams' return, the record does not indicate that Williams relied on their advice or that he provided them with full information concerning his finances. Williams himself did not take the stand and did not testify that he had relied on the advice of others. Second, regardless of Williams' reliance, denial of the requested instruction was not reversible error because the trial judge gave adequate instructions on reliance. Defendant's brief acknowledges that the "bare bones of the defense of reliance was given" by the court. The trial judge also fully instructed the jury on wilfulness,[5] specific intent,[6] and the use of tax

---

5. On wilfulness the court instructed:

In order to find the defendant guilty of any or all of the charges contained in Counts I, II and III of the indictment you must not only find that he did the acts complained of and of which he stands charged, that is, the false subscribing, but you must also find that the acts were done willfully by him. The word "willful" as used in this statute means deliberately and with knowledge, as distinguished from careless, inadvertent or negligent. That is to say, the defendant knew and specifically

intended the return to be false when he made and subscribed it.

. . . . .

If a person in good faith believes that his income tax return truthfully reports his taxable income and allowable deductions under the internal revenue laws, he cannot be guilty of subscribing to a false return.

6. On specific intent the jury was charged that

The crime charged in this case is a serious crime which requires proof of specific intent

preparers.[7] These instructions adequately protected the defendant's rights even though the specific instructions requested were denied, and consequently there was no error in failing to grant the requested instructions.

[11] Williams' last objection regarding the failure to give an accomplice witness instruction pertaining to Munro's testimony suffers the same defects under the *Pine* standard. Munro was not shown to be an accomplice in Williams' fraudulent reporting of his income from The Security Company. While Munro was deeply involved in the operation of that service, he is not linked to the misreporting of income charged in the indictment. In addition, the instructions given were adequate. During oral argument defense counsel conceded that the instruction which Williams requested at trial went beyond the normal hornbook model but defense counsel still contended that the court should have instructed the jury that it "must weigh [an accomplice's] testimony more carefully than a witness who does not have the same personal interest." The instruction actually given is close to the one suggested by defense counsel at oral argument: "All evidence of a witness whose self-interest or attitude is shown to be such as might tend to prompt testimony unfavorable to the accused, should be considered with caution and with great care." The court's instruction adequately served the purpose of an accomplice instruction since it cautioned the jury to consider the possible motives that might influence the testimony of persons such as Munro.

Having considered all of the defendant's numerous objections and finding them without merit, the conviction is affirmed.

AFFIRMED.

---

before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids, or knowingly failed to do an act which the law requires, purposely intending to violate the law.

. . . . .

In determining whether or not a man honestly believes that he has reported all of his gross income on his tax return, you are to consider all the evidence in the case. It is for you to decide whether he acted in good faith or whether he was acting with the specific intent to violate the law.

7. In regard to reliance on tax preparers, the jury was charged that

Lack of intent may be shown by evidence that omissions of income, if there are any omissions, were caused by the actions of the person who prepared the tax return. The defendant has introduced evidence showing that he did not prepare the tax returns in question. However, if the defendant willfully failed to provide his tax return preparer with all of the necessary information regarding income, he cannot avoid the responsibility for a false return. Nor can the defendant escape this responsibility if he knew that the return was false when he signed it.