**UNITED STATES, Appellee,**

v.

**Captain Frank L. KING, SSN 474–52–6874, United States Army, Appellant.**

**CM 442194.**

U.S. Army Court of Military Review.

31 Aug. 1983.

Foreman, J., concurred and filed opinion.

Hansen, C.J., concurred in part and dissented in part and filed opinion.

---

Captain Peter R. Huntsman, JAGC, argued the cause for the appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Lieutenant Colonel R. Rex Brookshire II, JAGC, and Major Robert C. Rhodes, JAGC.

Major Joseph A. Rehyansky, JAGC, argued the cause for the appellee. With him on the brief was Lieutenant Colonel John T. Edwards, JAGC.

Before HANSEN, FOREMAN and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

BADAMI, Judge:

The appellant was arraigned on charges alleging sodomy, and conduct unbecoming an officer and a gentleman (four specifications).[1] In unrelated incidents involving his premarital peccadilloes with his 15-year-old wife-to-be, Alice Mae Harrington, appellant was charged with sodomy of a child under 16 years of age, carnal knowledge, conduct unbecoming an officer and a gentleman (three specifications), and obstruction of justice (two specifications).[2] He pleaded not guilty to the charges and specifications and a trial on the merits ensued. The members of his general court-martial found him guilty as charged except he was acquitted

of one of the obstruction of justice charges. Appellant was sentenced to dismissal from the service, confinement at hard labor for 14 years, and total forfeitures. We reverse in part.

This appeal concerns two evidentiary issues relating to each series of incidents. The first issue concerns the admissibility of three sworn statements by the 15-year-old. Contrary to the military judge's ruling, we hold these statements to be inadmissible under the residual hearsay rule, Mil.R.Evid. 803(24) as there was an inadequate showing that they had the equivalent circumstantial guarantee of trustworthiness. The second issue concerns the admissibility of testimony concerning other sexual acts by the appellant. We hold such evidence was admissible as relevant and sufficiently similar to the acts charged under Mil.R.Evid. 401–404.

### I

The three sworn statements (Prosecution Exhibits 3, 4 and 5) were taken from appellant's then 15-year-old wife-to-be, Alice Mae Harrington. By the time of trial Miss Harrington and appellant were married. The statements were proffered as part of the government case through the testimony of two special agents of the United States Army Criminal Investigation Command. The statements detail the allegations of sodomy of a child under 16 years of age, and carnal knowledge, and constitute the sole evidence in the government's case on these specifications. At trial Alice Mae Harrington King acknowledged that she made the statements to the government agents but declared that she did so after her father impregnated her so to avoid blaming him. Alice thought "it would be a good idea" to "pin" the baby on Frank King so she could marry him and get out of a difficult family situation. Alice testified that she had been sexually abused since the age of five, that her father also physically abused her by striking her with his fists,

1. Violations of Articles 125 and 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 925 and 933 (1976).

2. Violations of Articles 125, 120, 133, and 134, UCMJ, 10 U.S.C. §§ 925, 920, 933, and 934 (1976).

that she previously reported the abuse to the military authorities to no avail, and that she had on one occasion attempted suicide by a drug overdose. The government did not rebut these assertions. Alice denied any truth to the allegations in the statements that she and Captain King had engaged in sexual intercourse. The military judge admitted the statements made out-of-court both to permit impeachment of Alice's testimony at trial and substantively under Military Rule of Evidence 803(24).[3] Appellant contends that this ruling was error. We agree holding that those statements do not contain the circumstantial guarantees of trustworthiness required by Mil.R.Evid. 803(24).

In *United States v. Whalen,* 15 M.J. 872 (A.C.M.R.1983), we recognized that Mil.R. Evid. 803(24) is a viable basis for the admission of extrajudicial statements as substantive evidence. That rule prescribes a number of conditions which must be satisfied before evidence is admitted.[4] Both in their briefs and in oral argument, appellant's counsel and counsel for the government make no point that the conditions of the rule were not satisfied except in the requirement that the evidence have "equivalent circumstantial guarantees of trustworthiness" found in other exceptions to the hearsay rule. It is that condition which concerns us.

To satisfy that condition the government points to the following facts. First, Mrs. King was available at trial for cross-examination by the party against whom the statements were offered. As Judge Learned Hand observed in *DiCarlo v. United States,* 6 F.2d 364, 367–68 (2d Cir.1925), when the fact-finders decide the truth, it is often not what the witness says now but what he said before. As the witness is under oath, the court members could evaluate the demeanor of the witness at trial and determine whether the prior statements or the testimony at trial is more believable. Second, the statements were made earlier in time than her in-court recantation and all three statements were similar in detail. Finally, the agents present at the taking of the statements testified to the declarant's then general demeanor and her willingness to make the statements.

■ While these are important considerations, we remain unpersuaded that they are sufficient to show that the statements have equivalent circumstantial guarantees of trustworthiness. In analyzing the trustworthiness of a statement, we must examine the circumstance in which the declarant made the statement and the incentive he or she had to speak truthfully or falsely. *See Robinson v. Shapiro,* 646 F.2d 734 (2d Cir. 1981); *United States v. Bailey,* 581 F.2d 341 (3d Cir.1978).[5] Although the statements

---

**3.** As in this case, a military judge must make special findings on the factual matters as they relate to the three conditions listed in the Rule. However, where trial is before a court with members, these special findings should be addressed in an Article 39(a), UCMJ, session to avoid the danger that the court members may be unduly influenced in their own factual determination of the weight to be accorded the evidence.

**4.** Military Rule of Evidence 803. Hearsay Exceptions; Availability of Declarant Immaterial.

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(24) Other exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is

offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

**5.** The intent of the drafters of Rule 803(24) make it clear that the question of truthworthiness is to be approached on a case-by-case analysis. We caution that care should be used when the possibility that a criminal accused may be convicted solely on the basis of an

were made earlier in time, they were not made early enough so that physical tests could independently corroborate their accuracy. The fact that the statements were made to government agents, rather than within the immediate family or to a close acquaintance, is if anything a neutral fact. Unlike the hearsay exception dealing with an excited utterance, statements made to police officers are often calculated to convince rather than to convey an emotional reaction. Such statements are obviously more suspect and must be scrutinized carefully.

In the present case we find that the statements were not shown to be trustworthy. The declarant had a strong motive to fabricate at the time the statements were given to the government agents. As we noted earlier, Alice testified that she made the statements in order to clear her father of any blame that he had impregnated her. The claim against her father arose over a year prior to trial and at a time that she did not know the appellant. It cannot be dismissed as recent fabrication. The military judge was faced with a difficult dilemma: Is she lying at trial or when she made the statements? Obviously her marriage to the appellant provided a strong motive to testify falsely at trial, but an equally strong case can be made that her fear of her father motivated her to swear falsely when making the statements to the government agents.

The statements lack the guarantees of trustworthiness found in other long-recognized exceptions to the general rule of exclusion of hearsay evidence. The only possible exception is the similarity to "prior

testimony" which may be admitted under Rule 801(d)(1)(A), except for the fact that the statements were not made at a "trial, hearing or similar proceeding." *United States v. Luke,* 13 M.J. 958 (A.F.C.M.R. 1982). The circumstances of a police house interrogation cannot by any stretch of the imagination be compared to the solemnity of a trial where there can be no doubt of the accuracy of the words spoken and where the accused has the present opportunity to cross-examine the witness on the accuracy and truth of the matter recorded. Lacking the elements of special reliability found in the rule of "prior testimony," it cannot be said that these statements possess an especially high degree of trustworthiness.

In *United States v. Whalen, supra,* the existence of corroborating physical evidence allowed this Court to independently determine that a crime had occurred and that the accused was the perpetrator. While corroboration is not an absolute requirement, it is a factor to be examined. The federal courts have recognized that the presence or absence of corroborating evidence may be a critical factor.[6] *See United States v. Hinkson,* 632 F.2d 382 (4th Cir.1980); *United States v. Bailey,* 581 F.2d 341 (3d Cir.1978); *United States v. Ward,* 552 F.2d 1080 (5th Cir.1977); *United States v. Carlson,* 547 F.2d 1346 (8th Cir.1976).[7] Here there is a paucity of physical or testimonial evidence showing that the statements represented the truth. While there is evidence that the appellant and Alice were often seen in each others company and that appellant had given Alice an engagement ring, evidence of a surreptitious romance neither proves nor disproves that their relationship necessarily

out-of-court statement. Such practice may create pressure on police to secure out-of-court statements of witnesses, facilitating the manufacture or shading of evidence.

Obviously, questions concerning the sufficiency of the evidence will be raised in cases where the sole evidence against an accused consists of hearsay declarations. We do not reach this issue here.

6. The proponent of the statement should consider furnishing the military judge with a basis to determine whether there exists physical or

testimonial evidence to support either the fact that the declarant made the statement or that it represents the truth.

7. In *Chambers v. Mississippi,* 410 U.S. 284, 300, 93 S.Ct. 1038, 1048, 35 L.Ed.2d 297 (1972), the Supreme Court held that the trial judge erred in excluding third party confessions to murder where the confessions were made to close acquaintances shortly after the crime and the confessions were corroborated by other evidence and against the penal interest of the declarant.

included sexual intercourse or sodomy. We conclude that the assertions in the statements and the circumstances in which the statements were given do not provide for "equivalent circumstantial guarantees of trustworthiness" to permit their admission. As these statements were the sole evidence supporting those allegations involving Alice Mae Harrington, we must set aside and dismiss Additional Charges I, II, and III and their specifications.

## II

The remaining evidentiary question concerns appellant's opprobrious conduct as a clinical psychologist. The victims involved were three low-ranking enlisted female servicemembers and, in one case, a wife. All sought psychological counseling from appellant. With each patient the appellant used what he called "relaxation therapy." The appellant would first touch his patients on their arms, shoulders, and stomach. While there were variations with each patient, eventually, the appellant would place his hands on their pubic areas and breasts.

One patient, Mrs. H. was lying on the couch during one session, when appellant slid his hands between her thighs covering her vaginal area and manipulated it with his fingers. During another session he grabbed her breast but then excused himself, offering the darkness of the office as an excuse. With Seaman Deborah J., appellant told her that he would not touch any private areas, but did in fact touch the inside of her thigh on the pubic area. Airman First Class Lisa B. was also a victim of appellant's relaxation technique. In one session while she was lying down, appellant unbuttoned her blouse and moved his hand under her bra. Appellant then unzipped her pants and pulled them and her underwear down and placed his fingers in her vagina. A knock at the door interrupted this "therapy." Airman First Class Susan F. sought counselling because she was dissatisfied with the military and her job prospects. Appellant utilized his relaxation technique to touch her breasts and pelvis through loosened clothing. Appellant later invited her to his BOQ room ostensibly to do some typing for him. She agreed. Once she was in the BOQ room, he gave her wine and cheese. They conversed and the appellant asked her to make love. She refused. He became upset and began talking of suicide. The appellant sat down on a couch and Susan F. sat on the couch next to him. The accused rubbed her back and kissed her. He took her hand and placed it on his erect penis; she rubbed his penis. She licked his penis and took it into her mouth. The appellant ejaculated. The appellant did not force Susan F. to do any of these actions. In each case appellant's apparent motive and intent was his own sexual gratification.

At trial the military judge allowed, over timely defense objection, the testimony of Private First Class Crescent T. and Private First Class Brenda W., two young, low-ranking enlisted members. Crescent T. testified that she was in training as a patient-care specialist at Fort Ord when she met and began socializing with appellant. At appellant's suggestion, Crescent went to appellant's room on or about 1 August 1981 for a hypnosis treatment intending to quit smoking. Once inside the room, the two drank a beer and talked about their problems. At one point in their conversation, Crescent became upset and appellant suggested a massage to relax her. Because she had previous massages from psychologists before, Crescent agreed. She went to the bathroom and disrobed and when she returned found appellant dressed in a robe. Although this seemed wrong, she concluded that appellant knew what he was doing because he was an officer and a psychologist. Appellant massaged her whole body front and back and then proceeded to have sexual intercourse with her.

Brenda W. met appellant during duty hours while she was working as a medic. She also saw him on social occasions and went to his BOQ room to visit him twice. In early 1981 she visited appellant in his BOQ room just to talk because he was someone in whom she could confide. Once inside the BOQ room, appellant offered to

give her a back rub and she consented. Captain King asked her to undo her trousers so he could massage her further down on her body and also asked her to roll over so he could massage her front. She declined and the massage was terminated. The two of them watched television and appellant began talking about sex and about how he would like to make her happy even if he got nothing out of it. Brenda did not take him up on his offer and continued watching television. A few minutes later she noticed appellant was masturbating. She asked him to stop, and he replied that "he had to get satisfaction someway." Brenda asked appellant to take her home and he did so.

Mil.R.Evid. 401 contains a very expansive definition of relevant evidence. In addition, Rule 402 provides that all relevant evidence is admissible. Rule 404 establishes a special rule with regards to evidence of uncharged crimes or acts. Such evidence must be offered for some purpose other than to prove the bad character of a person or to show that he acted in a like manner. Permissible purposes include proof of motive, intent, opportunity, preparation, plan, knowledge, identity or absence of mistake or accident. In order for the evidence of uncharged misconduct to be admissible, there must be a nexus in time, place and circumstance between the offense charged and the uncharged misconduct; the evidence of uncharged misconduct must be plain, clear and conclusive; and its probative value must outweigh its potential prejudicial impact. *United States v. Hancock*, 14 M.J. 998 (A.C.M.R.1982).

Applying these rules to the facts of this case, we conclude that the military judge was within his discretion in admitting the challenged testimony over defense objection. At issue was whether the appellant's motive and intent was to medically treat or to gratify his own sexual desires. We find that the encounters with Crescent T. and Brenda W., both young low-ranking enlisted women who sought "counselling," albeit during off-duty hours, were relevant

to establish appellant's motive and intent and establish a familiar pattern where appellant would prey on and sexually exploit young women using his profession, his rank, and sometimes his military quarters to accomplish this end. *United States v. Brown*, 8 M.J. 501 (A.F.C.M.R.1979), *pet. denied*, 8 M.J. 234 (C.M.A.1980). Additionally, this evidence contained the required nexus in time, place, and circumstances. Although relevant evidence may be excluded in certain cases under Mil.R.Evid. 403, the military judge did not abuse his discretion in declining to do so.

The remaining assignments of error are without merit and no further discussion is necessary.

The findings of guilty of Additional Charges I, II, III and their specifications are set aside and the charges dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence, the Court affirms only so much of the sentence as provides for dismissal, confinement at hard labor for 10 years, and total forfeitures.

FOREMAN, Judge, concurring:[1]

I agree with Judge Badami's conclusion that the military judge erred by admitting the three pretrial statements of Alice Mae Harrington King. Military Rule of Evidence 803(24) adopts Federal Rule of Evidence 803(24) without change. Manual for Courts-Martial, United States, 1969 (Revised edition), Analysis of Military Rules of Evidence at A18–107. The rule was not intended to relax the hearsay rule, but rather was designed to "permit the courts to deal with new and presently unanticipated situations which demonstrate a trustworthiness within the spirit of the specifically stated exceptions." *United States v. Medico*, 557 F.2d 309, 315 (2d Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977). The rule allows introduction of hearsay which does not fit any of the enumerated exceptions when "certain exceptional guarantees of truthworthiness and

1. Judge Foreman took final action in this case prior to his departure for another assignment.

high degrees of probativeness and necessity are present." *United States v. Bailey,* 581 F.2d 341, 347 (3d Cir.1978). I believe that Alice Mae Harrington King's pretrial statements fall short of the standard.

Her pretrial statements are no more and no less plausible than her in-court testimony. Her motive to lie to the police was as strong and plausible as her motive to lie in court. The fact that her testimony in court may have been unbelievable does not make her pretrial statements believable. The fact that she repeated her pretrial accusations three times does not make them any more worthy of belief. Unlike the Chief Judge, I do not believe that evidence of a surreptitious courtship establishes the truthfulness of an accusation of carnal knowledge and sodomy.

Alice Mae Harrington King's pretrial statements do not have any guarantees of truthworthiness equivalent to the enumerated exceptions to the hearsay rule. Unlike *United States v. Whalen,* 15 M.J. 872, 879 (A.C.M.R.1983), as well as *United States v. Williams,* 573 F.2d 284 (5th Cir.1978) and *United States v. Leslie,* 542 F.2d 285 (5th Cir.1976), relied upon by the dissenting Chief Judge, her statements were not against her penal interest. Unlike *Chestnut v. Ford Motor Co.,* 445 F.2d 967 (4th Cir.1971), relied upon by the dissenting Chief Judge, her statement was not similar to an excited utterance nor was it similar to a statement made in connection with medical diagnosis or treatment. Unlike *United States v. Iaconetti,* 406 F.Supp. 554 (E.D.N.Y.), *affirmed* 540 F.2d 574 (2d Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977), relied upon by the dissenting Chief Judge, and *United States v. Whalen, supra,* the truthfulness of her statement was not substantiated by other evidence.[2]

I find her statements lacking the "circumstantial guarantees of trustworthiness" required by Mil.R.Evid. 803(24). Accordingly, I join Judge Badami in concluding that the military judge erred by admitting Alice Mae Harrington King's pretrial statements; and I concur in setting aside and dismissing Additional Charges I, II, III and their specifications.

I disagree with my two brothers regarding the admissibility of the testimony of Private First Class Brenda W. and Private First Class Crescent T. Neither of the events described by these women were sufficiently similar to the acts charged to warrant admission of their testimony. Mil.R. Evid. 404(b); *see United States v. Hancock,* 14 M.J. 998, 999 (A.C.M.R.1982).

Crescent T. was the appellant's social friend, not a patient. Her total disrobing in response to appellant's suggestion that he give her a massage indicates that she was a willing participant in the sexual activity which followed, not a victim. Brenda W. also was a social friend. She declined appellant's sexual overtures. Her description of the appellant's masturbation while watching television in his private quarters is irrelevant to charges of taking liberties with patients in a hospital setting. The testimony of these two women tended to portray the appellant as sexually active and aggressive during his off-duty hours, but neither proves nor disproves that the appellant took liberties with his patients while on duty. This general characterization of the appellant as sexually intemperate, without a nexus to an issue before the court, is precisely what is prohibited by Mil.R.Evid. 404(b).

However, I believe that the military judge's error in admitting the evidence was harmless in this case. The testimony of the appellant's patient-victims was clear, convincing and uncontradicted. Had the testi-

2. In *United States v. Iaconetti,* 406 F.Supp. 554 (E.D.N.Y.), *affirmed* 540 F.2d 574 (2d Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977), Judge Weinstein admitted the testimony of two business associates of the declarant, who testified that the declarant told them that the defendant had offered him a bribe. However, the declarant also reported the bribe offer to the Federal Bureau of Investigation and his out-of-court statement was corroborated by tape recordings, made by the Federal Bureau of Investigation, of subsequent conversations between the declarant and the defendant.

mony of Private First Class Crescent T. and Private First Class Brenda W. been excluded as it should have been, I have no doubt that the appellant still would have been convicted of abusing his patients. Accordingly, I join in affirming the findings of guilty of Charge I, Charge II and Additional Charge IV and their specifications. I also concur in Judge Badami's sentence reassessment.

HANSEN, Chief Judge, concurring in part and dissenting in part:

I concur with the lead opinion in all aspects except that part of the holding that the military judge erred when he admitted Prosecution Exhibits 3, 4, and 5. A statement is admissible under Military Rule of Evidence 803(24) when it has "equivalent circumstantial guarantees of trustworthiness" as determined by the court in light of the three criteria in Mil.R.Evid. 803(24)(A)–(C). To determine the truthworthiness of a statement, we must not only look at the statement with an eye to where it stands in the totality of the evidence, but also to the specific circumstances under which it was given.

In analyzing the immediate surrounding circumstances of the statements in question, it is imperative to note that Alice Mae Harrington King voluntarily made the three statements and is solely responsible for instigating these four charges against appellant. The CID agents recorded Mrs. King's recitation of the facts without prompting her or asking her any leading questions. After giving each statement, Mrs. King re-read each one, initialed and corrected errors, and signed each one. The first statement was given on 18 June 1981, less than one month after the first date and sexual encounter between her and appellant. The second statement was given on 25 June 1981. The third statement was given on 1 July 1981 and detailed the events, including sexual intercourse, which occurred on the previous night, 30 June 1981. As Mrs. King testified in court, these three statements were given remarkably close in time to the events they recapitulat-

ed, thereby mitigating the risks of insincerity and faulty memory. *United States v. Iaconetti,* 406 F.Supp. 554 at 559, *aff'd* 540 F.2d 574 (2d Cir.1976). The immediate circumstances surrounding her statements are equivalent in reliability to the first 23 exceptions to the hearsay rule. *United States v. Williams,* 573 F.2d 284 (5th Cir.1978); *United States v. Leslie,* 542 F.2d 285 (5th Cir.1976).

Analyzing the statements in light of the overall sequence of events, their trustworthiness becomes even more firmly established. Mrs. King and appellant were involved in an ongoing, growing relationship which ultimately resulted in marriage. The consensual sexual acts described in the three statements are consistent with the relationship which was developing between appellant and the future Mrs. King. The acts become cognizable by the criminal process because Mrs. King was a minor. At trial, Mrs. King's testimony ratified and confirmed virtually every substantive part of the three statements except those specific statements admitting that she and the appellant had engaged in various sexual activities which were the bases of the charges. She admitted visits to her house by appellant, dates with appellant including visits to his BOQ room, familiarity with the details of his room and the interior of the Linda Motel, her clothing left in his BOQ room, and the manner in which appellant concealed her in his car to avoid being seen by the MP's when returning from the Linda Motel. Mrs. King denies only the occurrence of the sexual acts while admitting to being with the appellant at all the times in question. Significantly, the first time she told a story inconsistent with her previously sworn statements was at trial, approximately four months after making the statements, three months after refusing to testify at the Article 32 investigation on the advice of her husband's counsel and two months after her marriage to the appellant. In light of all these facts prior to and since the events in question, and noting the escalating relationship between the two people, the statements appear to be reliable and

trustworthy documentations of what actually occurred.

As the lead opinion points out, this Court has observed in *United States v. Whalen,* 15 M.J. 872 (A.C.M.R.1983) that the government can use independent evidence to support the trustworthiness of a statement and justify its admission. Just as in Whalen, the circumstances here establish the statements' trustworthiness. In that case, the statement was admitted under the hearsay rule because it was given voluntarily, "was made shortly after the incident, and was reduced to writing and sworn." *Id.* at 878. The declarant as well as the agents to whom the declarations were made were subject to cross-examination before the court. This opportunity for confrontation, along with the identical circumstances surrounding the taking of the statements, exists in the present case and likewise establishes the trustworthiness of the statements.

The Federal courts allow an exception to the hearsay rule when similar indicia of reliability are present. *United States v. Leslie, supra; United States v. Iaconetti, supra,* 406 F.Supp. 554 at 559 (2d Cir.1976); *Chestnut v. Ford Motor Co.,* 445 F.2d 967 (4th Cir.1971), and *United States v. Williams,* 573 F.2d 284 (5th Cir.1978). In *Williams,* a prior inconsistent affidavit was admissible under Mil.R.Evid. 803(24) because: (1) the declarant admitted making the statement, (2) the statement was given closer in time to the actual events, (3) the affidavit contained handwritten changes by the declarant indicating that he had carefully examined it, and (4) the declarant was available for cross-examination before the jury, thus allowing the jury to observe his demeanor.

In *Leslie,* the court relied on Mil.R.Evid. 803(24) to justify receiving evidence of a "turncoat" witness when similar indicia of reliability were present, including a fifth indicator, that the declarant admitting making the statements in question. All five indicia of reliability exist in the present case.

The lead opinion finds the statements not trustworthy because the declarant had a strong motive to lie at the time the statements were given which can be found consistent with her in-court repudiation. In point of fact, the strongest motive to lie existed at the time of the trial. The declarant, the one who initiated the charges, has since married the accused. She now seeks to protect her source of emotional and financial support—her husband. I do not intend to belittle the atrocities apparently committed by the declarant's father against her. Conceivably, the motive, as seen by the lead opinion, to falsify by accusing appellant as the one who got her pregnant to protect her father could exist. However, a stronger motive exists to lie on the stand and protect her present husband. It is hard to believe that the relationship which was developing did not lead to the sexual relationship described by Mrs. King in her earlier statements. Her explanation of innocently going to meet appellant at the Linda Motel and the reasons for going to his BOQ room casts a pale of falsehood on the rest of her testimony. If the acts were nonconsensual, a greater case for the lead opinion could be made; however, it appears to me that Mrs. King believes she has found the love and security in appellant that she did not have from her father and is therefore willing to "forgive and forget" the offenses by repudiating her previous statements. It is understandable, but it does not make her statements inadmissible. In such a case, it is a question of credibility and weight for the court members as fact finders to decide. *United States v. Iaconetti, supra.* The exceptions to the hearsay rule exist to admit reliable evidence and to aid the court in determining the truth. The military judge did not abuse his discretion in determining that the hearsay in question had equivalent circumstantial guarantees of trustworthiness as required by Mil.R.Evid. 803(24) and I would affirm the conviction.