UNITED STATES, Plaintiff,

v.

Harry Dominick IACONETTI, Defendant.

No. 75 CR 277.

United States District Court, E. D. New York.

Jan. 8, 1976.

David G. Trager, U. S. Atty., Eastern District of New York by Raymond J. Dearie, Asst. U. S. Atty., for Government.

Leon Dicker, New York City, for defendant.

## MEMORANDUM and ORDER

WEINSTEIN, District Judge.

The defendant, Harry D. Iaconetti, a federal government contract inspector, was found guilty by a jury of soliciting and accepting a bribe (18 U.S.C. § 201(c)) and attempting to extort money (18 U.S.C. § 1951) from two government suppliers. He moves for a new trial on the ground that the verdict rested upon inadmissible rebuttal evidence by two government witnesses. For the reasons stated below, the court finds the evidence relevant, non-prejudicial and admissible under the hearsay rules.

### I. Facts

The government's chief witness against the defendant was Mr. Lioi, an officer in a corporation seeking a government contract. Mr. Lioi testified that on February 10, 1975, the defendant told him that it would be "hard to justify" a favorable pre-award survey, a prerequisite to the awarding of a contract, unless 1% of the contract price were paid to the defendant and "upper echelons" in the government. After the defendant requested the bribe, Mr. Lioi discussed it

with his partners and counsel for the corporation, contacted the FBI, and arranged for future conversations with the defendant to be secretly recorded. As a result, a significant portion of the government's case consisted of tapes of the conversations between Mr. Lioi and the defendant on February 11 and 24 of 1975.

To rebut the government's case, the defendant relied primarily on his own testimony. He denied each government witness' version of their unrecorded conversations with him. Furthermore, he testified that instead of requesting a bribe from Mr. Lioi on February 10, he was offered an unsolicited bribe of $1,000 by Mr. Lioi despite his repeated assurances that the contract would be awarded to the firm. He explained the tapes as recordings of conversations in which he was "leading . . . on" Mr. Lioi in order to "gather evidence".

One other explanation by the defendant of his conduct was revealed on his cross-examination by the government. Immediately after his arrest, with the money in his possession, the defendant had told the FBI that the bribery discussions with Mr. Lioi had been a joke. The defendant testified as follows:

"Q In fact, you told the FBI, Mr. Iaconetti, that the entire unfortunate incident was a practical joke, didn't you?

A I said it started out like a practical joke.

Q You didn't tell the FBI that the whole matter was a practical joke and that you had a reputation for being a practical joker, and this was one of your practical jokes that got out of hand? Isn't that what you told the—

A ·Yes, I said that to [Special Agent] Chandler I believe."

Because of the conflicting interpretations that could be given portions of the tapes, because understanding the taped discussions depends in part on what happened at the February 10th meeting, and because the defendant flatly contradict-ed Mr. Lioi's version of the meeting on the 10th, the government presented two rebuttal witnesses. The witnesses related Mr. Lioi's reports to them on the 10th of the defendant's statements earlier that day, thus substantiating Mr. Lioi's testimony that the defendant had solicited a bribe. The witnesses were Mr. Goldman, a business partner of Mr. Lioi, and Mr. Stern, the attorney for the firm.

Mr. Stern testified on direct examination as follows:

"Mr. Lioi said that an individual from GSA had been in the factory that day and that the individual had been there for purposes of doing a .pre-award survey with regard to a contract that [the firm] had bid on.

This individual had at one point in the day asked him directly for money. I believe the amount was $12,000 [approximately 1% of the contract]. And that that money was to feather the bed and give [the firm] that contract. . . . He also said that the man offered him a deal with regard to future contracts."

Defendant made a timely objection to the testimony of these two witnesses; the ground stated was that the testimony was prejudicial inadmissible hearsay. Federal Rules of Evidence, Rule 103(a)(1).

## II. Relevancy

■ Rules 401 to 403 of the Federal Rules of Evidence require that evidence be relevant and that its relevance not be outweighed by unfair prejudice. Rule 401 defines relevant evidence as tending to affect the probability of a proposition of fact a party must establish. It reads:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The testimony of the two rebuttal witnesses meets the relevancy test of Rule 401. It is highly probative of a material fact in the case, that is, that the defendant solicited a bribe from Mr. Lioi on February 10th, as charged in the indictment. Evidence that Mr. Lioi contacted a business partner and the attorney for the corporation shortly after his meeting with the defendant makes it more probable that something of consequence to the business occurred during the meeting with the defendant. It would be imperative to consult with a business partner after any discussion of a bribe in order to determine how to meet what might be a business crisis. The evidence showed that loss of this contract would have adversely affected the company. Once it was decided to resist, the corporation counsel's advice would be necessary in deciding how to act.

The testimony of these two witnesses as to the content of Mr. Lioi's communication with them also had an important bearing on the jury's evaluation of witnesses' credibility. The rebuttal evidence makes it more likely that Mr. Lioi's version of the February 10th meeting with the defendant rather than the defendant's testimony that Mr. Lioi was actively seeking to bribe him, was accurate. Confirmatory evidence is relevant since it aids the jury in evaluating the probative force of other evidence offered to prove a material fact. Mr. Lioi's testimony was crucial with respect to not only the events of the 10th, but also those of the days intervening to the defendant's arrest on the 24th. It set the framework for the tape recorded conversations and helped to explain the tone of those conversations. Thus, the rebuttal evidence is relevant as directly probative of a material fact, as a reinforcement of the credibility of one key witness, and as an attack on the credibility of another witness.

Despite the fact that the evidence is relevant, it may be excluded in the trial court's discretion if its negative, prejudicial, consequences outweigh the probative value. As Rule 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

None of the factors listed in Rule 403 overbalances the probative force of the evidence. The prejudicial effect of the evidence was not significant. The jury had already heard that the defendant had solicited a bribe on February 10th. The emotional impact of hearing two brief confirmations of the solicitation was negligible. Furthermore, since the rebuttal testimony was restricted, by direction of the court, to repetition of the defendant's statements to Mr. Lioi, as related by Mr. Lioi to the witnesses, there was no confusion, delay, or waste of time.

### III. Hearsay

■ Goldman's and Stern's testimony would traditionally have been characterized as hearsay. They repeated the extra judicial declarations of Lioi relating what the defendant said to prove what defendant said. This is hearsay under Rules 801(a), (b) and (c) of the Federal Rules of Evidence reading:

"Rule 801 Definitions

The following definitions apply under this article:

(a) Statement. A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion. (b) Declarant. A 'declarant' is a person who makes a statement. (c) Hearsay. 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Exceptions to this rule provide three independent routes by which the rebuttal witnesses' reports of Mr. Lioi's out of court statements to them may be admitted as evidence in chief.

### A. Consistent statement to rebut charge of fabrication

Under Rule 801(d)(1)(B) prior consistent statements of a witness testifying and subject to cross-examination concerning his statements are not hearsay when offered under certain circumstances to support credibility. It reads:

"(d) Statements which are not hearsay. A statement is not hearsay if—
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . ."

The rebuttal evidence meets the three conditions of Rule 801(d)(1)(B). First, the declarant, Mr. Lioi, testified at the trial and was subject to cross-examination about the February 10th meeting. Second, Mr. Goldman's and Mr. Stern's testimony was consistent with Mr. Lioi's testimony about the defendant's solicitation of a bribe. Third, the evidence rebutted an implied charge of improper motive. The defendant's account of his February 10th conversation with Mr. Lioi contradicted Mr. Lioi's account both in matters of major importance and in details. The total variance between the two accounts of the February 10th conversation is sufficient to constitute an implied claim by the defendant that Mr. Lioi lied because of improper motive. The defendant also expressly suggested on the witness stand that Mr. Lioi fabricated the idea of the defendant's seeking a bribe for the improper motive of covering up the fact that Mr. Lioi himself had attempted to bribe the defendant.

### B. Admission of defendant

The evidence may be considered an admission by the defendant under an agency theory and therefore admissible under Rule 801(d)(2)(C):

"(d) Statements which are not hearsay. A statement is not hearsay if . . . (2) Admission by party-opponent. The statement is offered against a party and is . . . (C) a statement by a person authorized by him to make a statement concerning the subject . . . ."

From the other evidence in the case, including the transcripts of February 11 and 24, the court finds, as a predicate for admissibility pursuant to Rule 104(a), that the defendant requested a bribe from Mr. Lioi on February 10th and authorized him to confer with his associates in order to get their permission to pay that bribe. He was fully aware of the organization of the business and knew that Mr. Lioi could not make the large payment demanded without the permission of his business associates. To demand a bribe was, therefore, to authorize those who ran the business to discuss the demand. Mr. Lioi's repetition of the defendant's solicitation is, as a result, an authorized statement, an admission by a party.

### C. Reliable and necessary hearsay

The Federal Rules of Evidence codify an open-ended exception for reliable and necessary hearsay. Its use requires careful exercise of judicial discretion and the satisfaction of precise criteria. It reads:

"Rule 803. Hearsay Exceptions: Availability of Declarant Immaterial. The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . .
(24) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

"However, a statement may not be admitted under this exception unless the

proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant."

■ The first requirement of Rule 803(24) is that there be "circumstantial guarantees of trustworthiness" equivalent to those for the enumerated hearsay exceptions. The declarant was available for cross-examination. The fact that the statement was made close on the heels of the criminal event and to persons with whom it was appropriate and even necessary to communicate would seem to mitigate the risks of insincerity and faulty memory. The quality of the factors cited as insuring reliability for the first twenty-three hearsay exceptions range over an entire spectrum. The factors present here are certainly equivalent in reliability to those of many of the other exceptions and superior to some. We prefer not to rest on the state of mind exception, Rule 803(3), even though *United States v. Annunziato,* 293 F.2d 373, *cert. denied,* 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961), in circumstances much like those before us, admitted hearsay on that theory. That case probably went beyond the limits of Rule 803(3) by allowing "a statement of memory or belief to prove the fact remembered or believed." *Shepard v. United States,* 290 U.S. 96, 106, 54 S.Ct. 22, 26, 78 L.Ed. 196, 203 (1933); *United States v. Kennedy,* 291 F.2d 457, 459 (2d Cir. 1961).

The second requirement of the Rule is that the "statement [was] offered as evidence of a material fact." Rule 803(24)(A). This requirement seems redundant since, if it did not tend to prove or disprove a material fact, the evidence would not be relevant and would not be admissible under Rules 401 and 402. What is probably meant is that the exception should not be used for trivial or collateral matters. The discussion of the probative value of the evidence for the

purpose of meeting the requirements of Rule 401 makes it clear that the evidence is relevant to a material proposition of fact in the case and is of great importance.

Rule 803(24)(B) requires that the "statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." The testimony of the two rebuttal witnesses is the most powerful evidence of what was said in view of the straight conflict between the chief witness for the prosecution, Mr. Lioi, and the defendant, with respect to what happened on the critical date of February 10th. Furthermore, the testimony not only casts light on what was said, but also on how it was said. This is important because of the statement of the defendant to the FBI that the bribery discussion was all a joke. Thus, the meaning of the words used by the defendant on February 10, the critical date, depends to a considerable extent on body motions and whether defendant was laughing or winking, whether his tone of voice would give color and meaning to words which otherwise would be neutral. Even the words, "I don't want to take a bribe and will not take one," said with a wink and a smile might well be interpreted to mean exactly the opposite. Evidence of Mr. Lioi's response to the February 10th conversation is in the final analysis the best available to resolve doubt about what actually occurred between the defendant and Mr. Lioi.

In addition, "the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Federal Rules of Evidence, Rule 803(24)(C). There is a clear conflict of credibility. The jury was entitled to all the help available on the point.

■ Finally, the government gave the defendant ample notice of the intention to offer the statement. Notice was given midway through the defendant's testimony, five days before the rebuttal witnesses were called. Defendant did

not request a continuance or make any reference to an inability to prepare adequately to meet the testimony of the new witnesses. Although notice was not given in advance of trial, as required by the language of the Rule, allowance must be made for situations like this in which the need did not become apparent until after the trial had commenced. Since it was not the proponent's fault that notice could only be given after the trial began, and since the defendant was not prejudiced by the mid-trial notice, the evidence was properly admitted under Rule 803(24).

## IV.   Presentation on Rebuttal

■ The court has broad powers to control the mode and order of interrogating witnesses. Federal Rules of Evidence, Rule 611(a). Presentation on rebuttal, after the defendant had testified, rather than as part of the government's direct case, was appropriate and desirable.

## V.   Conclusion

The rebuttal evidence was properly admitted. It was necessary so "that the truth may be ascertained and proceedings justly determined," as required by the fundamental rule of interpretation of the Federal Rules of Evidence, Rule 102.

The motion for a new trial is denied.

So ordered.