UNITED STATES

v.

**Michael E. YEAUGER, 287 56 8113 Sergeant (E–5), U.S. Marine Corps.**

**NMCM 84 2381R.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 16 Jan. 1984.

Decided 30 June 1987.

WILLIAM J. HOLMES, Civilian Defense Counsel.

CAPT DAVID C. LARSON, JAGC, USN, Appellate Defense Counsel.

LT TERRY J. ROMINE, JAGC, USNR, Appellate Government Counsel.

Before COUGHLIN, MIELCZARSKI and DECARLO, JJ.

DECARLO, Judge:

Appellant was convicted by a General Court-Martial (officers & enlisted) of a four day unauthorized absence, three specifications of conspiracy to commit larceny, three specifications of larceny (corresponding with the conspiracy allegations), and one specification of unlawfully receiving and concealing stolen property in violation of Articles 86, 80, 121, and 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 886, 921, 934, respectively. He was sentenced to twenty years confinement, total forfeitures, reduction to pay grade E–1, and a dishonorable discharge. The findings and sentence were approved on review by the convening authority. We originally affirmed both the findings and sentence in this case.[1] *United States v. Yeauger,* 20 M.J. 797 (N.M.C. M.R. 1985). In that decision, we found, *inter alia,* that a pretrial, unsworn statement of a servicemember who identified the appellant as his co-actor in the larcenies alleged was admissible under the residual hearsay exception embodied in Military Rule of Evidence (MRE) 803(24). This case is now before us upon remand from the Court of Military Appeals 23 M.J. 245, for reconsideration in light of *Lee v. Illinois,* — U.S. —, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), and *United States v. Cordero,* 22 M.J. 216 (C.M.A. 1986), subsequent cases concerning the issue of the admissibility of statements made by criminal accomplices. Finding those cases to be inapplicable to the facts presented in the instant case, we now affirm our original decision.

In *Lee v. Illinois, supra,* the petitioner and co-defendant were charged with committing a double murder and were tried together and convicted at a bench trial at which neither testified. Both Lee and her co-defendant had originally confessed to committing the crimes. The separate confessions given by them to the police factually overlapped to a great extent except for the fact that the co-defendant stated that the killings were planned in advance while Lee's version related that the crimes were the result of an intense argument. In finding Lee guilty of both murders, the trial judge specifically relied upon the co-defendant's earlier confession particularly with respect to his rejection of her claims that she acted either in self-defense or under an intense and sudden passion. The Supreme Court reversed Lee's conviction, holding that the co-defendant's confession was not reliable enough to warrant its untested admission into evidence against Lee. The Court reasoned that the Confrontation Clause

> is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination ... such a confession 'is hearsay, subject to all the dangers of inaccuracy which characterize hearsay generally ... More than this, however, the post-arrest statements of a co-defendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and exonerate himself, a co-defendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence.' *Bruton v. United States,* 391 U.S. [123] at 141, 88 S.Ct. [1620 at] 1631 [20 L.Ed.2d 476 (1968)] (White, J., dissenting).

106 S.Ct. at 2062.

Likewise in *United States v. Cordero, supra,* the Court of Military Appeals ruled that in a prosecution for child abuse, an inculpatory hearsay statement made to criminal investigators by appellant's wife who had since departed the country could not be admitted as substantive evidence

---

1. Pursuant to a recommendation by the Naval Clemency & Parole Board, the Secretary of the Navy reduced the confinement portion of the sentence to ten years.

against the appellant under Military Rule of Evidence (MRE) 804(b)(5). In its opinion, the Court stated that "we are unable to allow the use against Cordero of this extrajudicial statement in the preparation of which criminal investigators played a major role, when he has no opportunity to cross-examine the declarant." 22 M.J. at 223.

Underlying both the *Lee* and *Cordero* decisions is the notion that the confrontation clause demands that "when one person accused another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subject to the scrutiny of cross-examination." *Lee,* 106 S.Ct. at 2062–63. *See also Cordero, supra,* at 223. Both cases highlight the unanimously held belief that "the right to confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). *See also California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). In cases where the hearsay declarant is available and subject to cross-examination, however, the same constitutional pressures do not exist and the need for reliability of the hearsay is logically somewhat lessened although by no means is it lost. *See United States v. Renville,* 779 F.2d 430, 440 (8th Cir.1985); *United States v. McPartlin,* 595 F.2d 1321, 1350 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). *See also United States v. Barror,* 23 M.J. 370, 372 (C.M.A. 1987); *United States v. Hines,* 23 M.J. 125, 128 (C.M.A. 1986) (cases stressing that where the declarant is not available, the Confrontation Clause requires a degree of reliability high enough so as to be an effective substitute for cross-examination.)

In the instant case the accomplice, SSGT Callahan, testified at trial and was subject to cross-examination. The constitutional dangers presented in *Lee* and *Cordero,* therefore, are not present in this case and to the extent that those cases are premised upon confrontation clause considerations concerning the introduction of hearsay statements of accomplices, they are inapplicable. At issue is not whether Callahan's oral confession is sufficiently trustworthy to overcome the heavy demands of the Confrontation Clause, but rather whether it has sufficient circumstantial guarantees of trustworthiness to warrant admission under MRE 803(24) where the accomplice was available and testified at trial. *See Hines, supra,* at 128 (question of admission must be judged separately under confrontation and hearsay standards); *United States v. Powell,* 22 M.J. 141, 145 (C.M.A. 1986) (Everett, C.J., concurring). We hold that it does and that the military judge did not err in admitting it into evidence against the appellant.

During the Fall of 1981 the 22–Area Enlisted Club at Camp Pendleton, California was twice the subject of larceny. During the ensuing investigation, agents from the Naval Investigative Service (NIS) interviewed SSGT Callahan, an assistant manager at the club. In that interview, Callahan confessed to having participated in the larcenies with the appellant, also an assistant manager in the club system. He stated that appellant had initially approached him with a scheme to rob the club. Under the plan, the two were to go to the club in the early hours of the morning, open the safe, take the money and then appellant would handcuff Callahan to a stall in the bathroom. Appellant would then leave with the money and return shortly thereafter to open the club and "discover" Callahan cuffed to the stall and claiming to be the victim of an armed robbery. The money from the theft was to be split between the two after things "cooled off". He stated that he and appellant carried out the plan.

Callahan also related to the agents the facts of the second larceny at the club which had occurred about a month after the first. This plan involved cutting through the club safe with a torch to make it look like an "outside" job. Appellant procured a torch and he and Callahan drove to the club in the early morning hours, let

themselves in, and proceeded to cut open the safe and steal the money therein. According to Callahan, he did not receive his full share of the money taken, however, because of "heat" from the NIS investigation of the first larceny. When appellant was transferred to the east coast, he gave the money to his parents until things cooled off. The money was eventually paid to Callahan by appellant's parents by means of a check for $800.00. Callahan retracted this confession shortly after it was made.

At appellant's trial, the Government sought to introduce Callahan's confession pursuant to MRE 803(24) through the testimony of the NIS agent who had conducted Callahan's interview. Under MRE 803(24), statements not covered by any specific exception but having equivalent circumstantial guarantees of trustworthiness are admissible if the court finds (1) that the statement is offered to prove a material fact, (2) the statement is more probative on the point for which it is offered than any other evidence reasonably available, and (3) where the admission of the statement would serve the general purposes of the rule and the interests of justice. At issue here is whether Callahan's oral confession has sufficient circumstantial guarantees of trustworthiness.[2]

We find that it does in this case for several reasons, the most important being that Callahan was present at trial and was subject to cross-examination. Although he testified, contrary to his earlier confession to the NIS, that he and appellant did not plan or participate in the club larcenies, he was nonetheless given the opportunity to explain to the members why his story had changed since the NIS interview. This fact alone provides significant indicia of trustworthiness. *See United States v. Leslie,* 542 F.2d 285, 290 (5th Cir.1976). *See also United States v. Renville,* 779 F.2d 430, 440 (8th Cir.1985); *Vogel v. Percy,* 691 F.2d

843 (7th Cir.1982); *United States v. Iaconetti,* 406 F.Supp. 554, 559 (E.D.N.Y.1976), *aff'd* 540 F.2d 574 (2d Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). The fact that Callahan testified also satisfies the main concern of both the Confrontation Clause and the hearsay rule which is the lack of any opportunity to cross-examine the absent declarant. *See Lee, supra; Anderson v. United States,* 417 U.S. 211, 220, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974); *Renville, supra,* at 440; *United States v. Bohr,* 581 F.2d 1294, 1304 (8th Cir.1978). *See also* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(24)[01], at 803–375 (courts are willing to admit hearsay evidence where the declarant is available and subject to cross-examination, and the hearsay statement was not the product of the dangers against which the rule seeks to guard.) In cases such as this where the hearsay declarant is available and subject to cross-examination, the degree of reliability necessary for admission under MRE 803(24) is reduced primarily because of the opportunity for the declarant to explain why a particular statement is or is not accurate. *See Renville, supra,* at 440; *United States v. McPartlin,* 595 F.2d 1321, 1350–51 (7th Cir. 1979), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). Callahan's testimony allowed the members to judge the accuracy of his confession and the motives he had for making it. Thus the presumption of unreliability that normally attaches to accomplice confessions admitted against a co-actor without the benefit of cross-examination and which formed the basis for the Supreme Court's decision in *Lee* is overcome where the declarant is available and speaks in open court. *See United States v. Lee,* 106 S.Ct. at 2062–63 ("accomplice accusation is presumptively suspect and *must* be subjected to the scrutiny of cross-examination.")[3] As Professor McCormick has aptly noted,

---

2. We agree with the finding in our original opinion that the three remaining criteria for admission under the rule are met in this case. *See* 20 M.J. at 800.

3. We stress, however, that the fact of cross-examination does not *per se* satisfy the trustworthiness requirements of the residual hearsay rules, although it is a strong factor weighing in favor of reliability. *See United States v. Hines,*

the witness who has told one story afore-time and another today has opened the gates to all the vistas of truth which the common law practice of cross-examination and re-examination was invented to explore. It will go hard, but the two questioners will lay bare the sources of the change of face, in forgetfulness, carelessness, pity, terror or greed, and thus reveal which is the true story and which is the false.

McCormick, *Evidence* § 39 at 75.

We also find it significant that Callahan admitted making the statement to the NIS agents and, in fact, confirmed that what the agents testified to at trial was an accurate version of his statements made to them. *See Leslie, supra,* at 290–91; *United States v. Powell,* 22 M.J. 141, 145 (C.M.A. 1986). Although he testified that these earlier statements were lies resulting from the fear of imprisonment and the threats of an unknown person who confronted him in a shopping mall and told him to implicate the appellant or risk the life of his girlfriend and daughter, this simply created a question of witness credibility well within the province of the members to decide.[4] We agree with the oft-quoted observation by Judge Learned Hand that "if from all the jury sees of the witness, they conclude that what he says now is not the truth, but what he said before, they are nonetheless deciding from what they see and hear of that person and in court." *DiCarlo v. United States,* 6 F.2d 364, 368 (2d Cir.1925). *See also Leslie, supra.*

It is also noteworthy that Callahan's oral confession to the NIS was very detailed and specific, relating facts which would only be known by one actually involved in the offenses. Further, his statement was strongly corroborated. The testimony of PVT Yeauger, appellant's wife, was, for all practical purposes, identical to Callahan's statement. According to PVT Yeauger, she and appellant purchased a set of hand-cuffs just prior to the first larceny. She was present when the money was split up, and she heard appellant and Callahan talking about how appellant had handcuffed Callahan to a bathroom stall to make the job look like a robbery. Prior to the second larceny appellant purchased a torch and approached Callahan with the idea to use it to cut into the club safe. Callahan was initially reluctant to do so, but later agreed. After the larceny, appellant's parents were given Callahan's share of the money for safekeeping. She further stated that Callahan received his share eventually when appellant's parents tendered him a check for $800.00.

Police reports on the larcenies also confirm the veracity of Callahan's confession. According to the reports, the first larceny was reported by the appellant who had gone to open up the enlisted club for the day and had found Callahan handcuffed to the bathroom stall. Callahan claimed to have been robbed by masked gunmen. The report on the second larceny indicated that the safe was cut open with a torch. Additionally, evidence was produced to show that appellant's parents did indeed pass a check for $800.00 to Callahan.

In short, we find that there is ample evidence to demonstrate sufficient circumstantial guarantees of trustworthiness surrounding Callahan's oral confession to the NIS to warrant admission of that statement against the appellant under MRE 803(24). The evidence and testimony presented, coupled with Callahan's own testimony "strongly suggest that the declarant's perception, memory, narration, and sincerity concerning the matters asserted [in the NIS interview] are trustworthy," *United States v. Friedman,* 593 F.2d 109, 119 (9th Cir.1979), and they provided a meaningful basis for assessing both the candor of the declarant and the accuracy of

23 M.J. 125, 128 (C.M.A.1986). *Cf. United States v. Powell,* 22 M.J. 141, 145 (C.M.A.1986) (Everett, C.J., concurring).

4. The patent incredibility of appellant's in-court testimony and the improbable reasons he gave for changing his story are further indicia of the reliability of his earlier confession. *United States v. Powell,* 22 M.J. 141, 145 (C.M.A.1986).

the statement. *See United States v. Barror*, 23 M.J. 370, 372 (C.M.A.1987). Therefore we find that the military judge below did not abuse his discretion in admitting the extra-judicial statements under MRE 803(24).

Accordingly, upon reconsideration, the findings and sentence as approved on review below are affirmed.

Senior Judge COUGHLIN and Judge MIELCZARSKI concur.