UNITED STATES, Appellee,

v.

Michael E. YEAUGER, Sergeant, U.S. Marine Corps, Appellant.

No. 52,775.

NMCM 84 2381R.

U.S. Court of Military Appeals.

Oct. 24, 1988.

Certiorari Denied April 3, 1989.

See 109 S.Ct. 1638.

For Appellant: *William J. Holmes, Esq.* (argued); *Commander J.A. Williams, JAGC, USN* (on brief); *Captain David C. Larson, JAGC, USN.*

For Appellee: *Lieutenant Commander Lawrence W. Muschamp, JAGC, USN* (argued); *Captain Wendell A. Kjos, JAGC, USN* (on brief); *Captain Carl H. Horst, JAGC, USN, Lieutenant Commander Jeffrey S. Sawtelle, JAGC, USN, Major E.D. Clark, USMC.*

*Opinion of the Court*

COX, Judge:

Appellant stands convicted, contrary to his pleas, of the following offenses under the Uniform Code of Military Justice: three specifications of conspiracy to commit larceny; absence without leave; three corresponding specifications of larceny; and receipt of stolen property, in violation of Articles 81, 86, 121, and 134, UCMJ 10 U.S.C. §§ 881, 886, 921, and 934, respectively.[1]

We granted review to determine:

---

1. Appellant was sentenced to a dishonorable discharge, confinement for 20 years, and accessory penalties. Pursuant to a recommendation by the Naval Clemency and Parole Board, the Secretary of the Navy reduced the confinement to 10 years. The Court of Military Review affirmed the findings and sentence as reduced. 20 M.J. 797 (1985). On initial appeal to this Court, we remanded the record to the Court of Military review for their reconsideration in light of *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), and *United States v. Cordero,* 22 M.J. 216 (CMA 1986)—two opinions that were published after the Court of Military Review's decision. On remand, the Court of Military Review again affirmed. 24 M.J. 835 (1987). That court concluded that those two opinions, involving admissibility of statements of declarants unavailable for cross-examination, were not applicable. It is the appeal of this decision that is presently before us.

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY ADMITTING INTO EVIDENCE THE ORAL AND UNSWORN CUSTODIAL STATEMENT OF SERGEANT E. D. CALLAHAN UNDER RULE 803(24) OF THE MILITARY RULES OF EVIDENCE.

Callahan's statement relates to two of the larcenies and two of the conspiracies; the other Charges and specifications are unaffected.

The case was tried by members. The Government's primary evidence against appellant was the in-court testimony of his estranged wife, Lynne, and the pretrial statement of Callahan.[2] Lynne, a Marine Corps Private at the time of appellant's trial, testified in considerable detail about how appellant and Callahan had plotted and carried out the two larcenies under review. She testified under a grant of immunity and had already been convicted, in accordance with her pleas, for her role in two other larcenies (the larceny-conspiracy and receiving offenses of which appellant was ultimately convicted that were not connected with Callahan's testimony).

Lynne's statements and later testimony against appellant came about only after he had reported her to military authorities for her admitted lesbian activities. Initially, Lynne accused only appellant of the two larcenies; later she included Callahan. Based on Lynne's statements, appellant and Callahan were questioned. Appellant asserted his rights and declined to make a statement; however, Callahan took the bait.

The agents told him (or at least implied) that *both* Yeaugers had confessed and implicated Callahan as the ringleader. To convince Callahan, they showed him—but did not allow him to read—Lynne's written

confession and appellant's rights-warning form (which appellant had indeed signed in asserting his rights). According to the agents, Callahan thereupon capitulated and described in detail the actions leading up to and culminating in the offenses. This statement conforms in all significant details with the testimony and statements given by Lynne.[3] It is admission into evidence of this oral, unsworn statement that is in issue.

At appellant's trial, Callahan testified both on the foundation of the statement and on the merits. His position was that he admitted making the statement to the agents but claimed that it was not true. Evidently the factfinder at his own trial, where he tried the same story, was no more impressed because he was convicted for his role in the offenses. At appellant's trial, Callahan testified under a grant of immunity as a defense witness.

Callahan's explanation for his statement was that he was subject to two different pressures:

First, he claimed to have been unlawfully threatened and coerced by the investigating agents. Based upon substantial evidence to the contrary, the military judge rejected this assertion.

Second, he claimed to have been threatened by a mysterious blond stranger. The latter threat allegedly came about in the following manner:

Approximately 4 days before the fateful interview with the agents (a year and a half after the offenses and a continent removed), Callahan received an anonymous phone call threatening his life and that of his lady friend and his daughter. The caller ordered Callahan to meet him at a certain shopping mall 2 days later, which Cal-

---

2. There was also a quasi-admission by appellant to one of his co-workers, Staff Sergeant J.W. Rothrock, who testified:

> I was curious because there was a rumor going around that Sergeant YEAUGER had something to do with it [the larcenies]. I was curious and I asked him one night when we were out there if he did it, and he said, "I'm not going to say yes or no, but I told you, you

know, somebody would get them back," or joking, "Ha, ha, it serves them right," or something like that.

3. Since, by both Lynne's and Callahan's accounts, Lynne was not present at the scene of the crimes, Callahan's account goes well beyond Lynne's in describing the details of the events.

lahan did. There, he encountered the blond stranger who reiterated the threat and provided him with the story he was to give the investigators should they contact him. This story included the accusation against appellant and admission of Callahan's own involvement in these serious felonies.

Two days later, Callahan was indeed questioned by law enforcement personnel. Rather than mentioning the threat, he confessed to the offenses, as purportedly directed by the stranger, and implicated appellant. Apparently, the first time this alleged threat was brought to the attention of anyone in authority was at Callahan's own court-martial, where it also flopped.

Appellant did not testify on the merits in his trial. The primary thrust of the defense case was Callahan's denial of criminality and an attempt to establish an alibi for him.

The military judge admitted Callahan's statement under the residual hearsay provision, Mil.R.Evid. 803(24), Manual for Courts-Martial, United States, 1969 (Revised edition) (*see infra* ), after hearing Callahan's and the agents' versions of the events. The judge found Callahan's trial testimony—*i.e.,* his recantation of his prior admission and the blond-stranger story—to be "incredible" and the agents' account to be "trustworthy." The judge did not rule that the factfinder had to believe Callahan's admission but said:

> I'm simply saying that there's enough trustworthiness surrounding what he [Callahan] said on that day to be presented to the factfinders. They can decide whether or not it's consistent with what Mrs. YEAUGER has to say whenever she comes to testify and whatever else the Government presents.

The Court of Military Review agreed with the military judge. With respect to the central question of trustworthiness, the court placed emphasis on the availability of both Callahan and the agents for cross-examination; the general similarity of the

statement to another hearsay exception (Mil.R.Evid. 804(b)(3)) and nonhearsay (Mil. R.Evid. 801(d)(1)(A)) [4]; the circumstances surrounding the giving of the statement; the corroborating facts in evidence; the patent incredulity of Callahan's recantation; and Callahan's own validation of the fact of the prior statement. The court also noted that Callahan's presence and testimony precluded a confrontation-clause violation. 20 M.J. 797, 801–02 (NMCMR 1985).

On remand,[5] the Court of Military Review reiterated its holding that Callahan's statement had "sufficient circumstantial guarantees of trustworthiness ... to warrant admission ... under MRE 803(24)," noting again that the cases addressing statements not subject to confrontation were inapposite. 24 M.J. 835, 839 (NMCMR 1987). We agree.

Mil.R.Evid. 803 provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> \*      \*      \*      \*      \*      \*
>
> (24) *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the intention to offer the statement and the particulars of it, including the name and address of the declarant.

---

4. *Cf. United States v. Quick,* 26 M.J. 460 (CMA 1988).

5. *See* n. 1, *supra.*

There is no issue with respect to factors A through C or with the notice requirement. These criteria were resolved in the Government's favor by the military judge and confirmed by the Court of Military Review; we have no occasion to review them here. All that's in issue now is application of the criterion that the statement be one "not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness."

Those foregoing exceptions include: present sense impression; excited utterance; then existing mental, emotional, or physical condition; statements for purposes of medical diagnosis or treatment; recorded recollection; records of regularly conducted activity; absence of entry in records of regularly conducted activity; public records and reports; records of vital statistics; absence of public record or entry; records of religious organizations; marriage, baptismal, and similar certificates; family records; records of documents affecting interest in property; statements in documents affecting interest in property; statements in ancient documents; market reports and commercial publications; learned treatises; reputation concerning personal or family history; reputation concerning boundaries or general history; reputation as to character; judgment of previous conviction; judgment as to personal, family or general history, or boundaries.

■ Once proffered evidence meets the foundational requirements for any of these exceptions, it is admissible without independent judicial certification of reliability. It is then for the factfinder to decide how much, if any, weight to accord it. Not infrequently, factfinders disregard such evidence entirely, usually for self-evident reasons. Thus, inclusion within one of these categories is not conclusive of reliability. By the same token, a guarantee of reliability is not necessary for a statement to be "equivalent" to such an exception.

■ In the instant case, if Callahan had not testified at appellant's trial, his prior statement almost certainly would have failed the "equivalent circumstantial guarantees of trustworthiness" standard. Apart from the obvious confrontation problem, the statement itself would have to be viewed as "presumptively unreliable" due to its blame-spreading content. *E.g., Lee v. Illinois,* 476 U.S. 530, 545, 106 S.Ct. 2056, 2064, 90 L.Ed.2d 514 (1986); *United States v. Dill,* 24 M.J. 386 (CMA 1987).

Even the fact that the statement interlocked with Lynne's may not, of itself, have saved it. It is one thing to say that a hearsay statement of a coactor that interlocks with that of the *accused* may be reliable. *See Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987); *United States v. Dill, supra* at 388 n. 5. However, an accusatory statement of one coactor that only interlocks with the accusatory testimony or statement of another coactor is generally less trustworthy vis-a-vis the accused. Still, such corroboration, especially given the antithetical positions of the witnesses here, is another factor for the judge to consider.[6]

Adding to the mosaic of reliability was the solid coincidence of Callahan's statement with the physical evidence found at the scene of the offenses. In addition, Callahan himself testified, *see United States v. Powell,* 22 M.J. 141, 145 (CMA 1986) (Everett, C.J., concurring), with the result that the court was able to scrutinize his demeanor, along with that of the other witnesses.

What ultimately separates this case from *Dill,* however, is Callahan's voucher for the making of the prior statement, coupled with his cock-and-bull explanation for it. Under these circumstances, the logical inference is that the prior statement was

---

6. In addition, it does not appear that Callahan's statement was merely dragged out through a series of monosyllabic responses, utilizing Lynne's statement as the script. First, as indicated (n.3, *supra*), his statement went much further than Lynne's in many particulars. Second, even Callahan admitted that the genesis of the story was the blond stranger.

much closer to the truth. Also, it is not insignificant that Callahan's pretrial statement was decidedly self-incriminating as to himself.

In sum, it appears that the military judge carefully balanced many factors relating to trustworthiness, and he arrived at a defensible conclusion. *See United States v. Hines*, 23 M.J. 125, 135–36 (CMA 1986).

We agree that the statement was admissible and subject to such valuation as the factfinder deemed appropriate.[7]

The decision of the United States Navy-Marine Corps Court of Military Review on remand is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.

---

**7.** This case does not stand for the proposition that prior inconsistent statements admitted for impeachment purposes under Mil.R.Evid. 607 will meet the "reliability" test required for admission as substantive evidence under Mil.R. Evid. 803(24). Each proffer must be evaluated on its own merits.